



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTICT OF OHIO**
**WESTSERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. CR-1-02-054 |
| Plaintiff | : | (Judge Dlott) |
| Vs. | : | **NOTICE OF FILING OF** |
| | | **CURRICULUM VITAE** |
| TYREESE DORRAN PUGH, | : | |
| Defendant | : | |

Now comes Defendant, Tyreese D. Pugh, by and through undersigned counsel,

and hereby files the curriculum vitae of Sol Fulero.

Respectfully submitted,

Edward J. Felson (0041988)
Attorney for Defendant
36 East Seventh Street, Suite 1650
Cincinnati, Ohio 45202
(513) 721-2500

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon Wendy Cross,
Assistant U.S. Attorney, 221 East Fourth Street, Suite 400, Cincinnati, Ohio 45202, and
Attorney J. Robert Andrews, 2662 Madison Road, Cincinnati, Ohio 45208, by ordinary
U.S. mail or hand delivery this 26 day of August, 2002.

Edward J. Felson (0041988)

# VITA

## Solomon M. Fulero

June, 2002



## *Degrees Earned*

Doctor of Philosophy (psychology), University of Oregon, Eugene, Oregon, August 1979.

Juris Doctor (law), University of Oregon, Eugene, Oregon, December 1979.

Master of Arts (psychology), University of Oregon, Eugene, Oregon, June 1975.

Bachelor of Arts (with Honors, psychology/sociology), University of Maryland, College Park, Maryland, June 1973.

## *Licenses and Certificates*

Respecialization certificate in Clinical Psychology, Wright State University, August 1988 (full program of retraining, including course work, practica, and APA-approved internship).

State of Ohio, Psychologist License No. 3796, December 1986.

State of Ohio, Attorney License, Reg. No. 0000113, May 1980.

## *Awards and Honors*

Member, National Institute of Justice Technical Working Group on Eyewitness Evidence, 1998-2000 (34-member panel of law enforcement officers, prosecuting and defense attorneys, and eyewitness psychologists, final report sets forth national standards and guidelines for the handling of eyewitness evidence)

Member, Committee to Study the Insanity Defense, 1993-94 (7-member "blue-ribbon" panel appointed by Governor, final report eventually led to Ohio Senate Bill 285, legislation to make changes to competency/sanity/post-NGRI release laws in Ohio).

Editorial Board, Law and Human Behavior, 1995- (Associate editor, 2000-)

Scholar-in-Residence Award, Sinclair College, 1990-1998 (each year).

Russell Sage Foundation Predoctoral Residency in Law and Social Science, at University of Oregon School of Law, 1977-78, 1978-79.

## *Areas of Specialization*

My major area of specialization is legal psychology. In particular, my interests include the social and clinical interfaces of law and psychology, including generally the behavioral assumptions underlying evidentiary rules, jury processes, eyewitness reliability, competency and insanity, malpractice, ethics, and applications in civil law areas such as torts and family law. In order to pursue my broad forensic interests, I completed a clinical recertification program, with an APA-approved internship. This, along with my social psychology and legal training, gives me a unique opportunity to pursue "cutting edge" cross-

disciplinary issues in forensic psychology, in both its social/experimental and clinical aspects.

## *Present Academic Positions*

*Professor of Psychology, Sinclair College, Dayton, Ohio* (Department Chair, September 1993-April 2002, Professor, September 1988-present, Associate Professor, 1984-1988; Assistant Professor, 1980-1984).

*Clinical Assistant Professor of Psychology, Wright State University School of Professional Psychology*, Dayton, Ohio, 1980-present.

*Clinical Assistant Professor of Psychiatry, Wright State University School of Medicine*, 1991-present.

## *Memberships in Professional Organizations*

American Psychological Association:
   President-Elect, Division 41, American Psychology/Law Society, for 2003.
   Fellow status, 2000 (Division 41, American Psychology/Law Society)
   Member of APA Council of Representatives (elected from Division 41), 2000-2003
   Chair, Division 41 Dissertation Award Committee, 1990-93
   Chair, Division 41 Continuing Education Committee, 1995-2000
   Division 41 Executive Committee, elected Member-at-Large, 1995-1998
   Member, APA Task Force on Teaching of Psychology in Community Colleges, 1996-1997
American Psychological Society
Ohio Psychological Association
Midwestern Psychological Association
Law and Society Association
Ohio State, Dayton, Greene County, Butler County Bar Associations

## *Peer reviewer for scientific journals*

Law and Human Behavior (Associate Editor)
Journal of Forensic Psychology Practice (also on editorial board)
Psychology, Public Policy, & Law
Behavioral Sciences and the Law
Professional Psychology: Research and Practice
Journal of Applied Social Psychology
Journal of Personality and Social Psychology

--also have reviewed grant proposals for the National Science Foundation and National Institute of Mental Health

### *Clinical Experience*

*Clinical Director, Center for Forensic Psychiatry, Hamilton, Ohio,* February 1992-September 1997. Executive officer of non-profit agency with 10 employees, $850,000 budget; responsible for court-referred evaluations in four-county area (Butler, Warren, Clinton, Preble) in Southwest Ohio as well as crisis, prehospital screening, and other mental health services in Butler County.   Performed hundreds of evaluations for competency, sanity, conditional probation, mitigation, treatment in lieu of conviction, sexual predator status, presentence investigation, police employment screening, fitness for duty, custody and visitation, guardianship, etc.

*Private Practice of Psychology*, 1989-present, forensic psychology specialization. See above.

*Consulting Psychologist*, *Dayton Mental Health Center, Forensic Unit*,   1989-1992. For duties, see below.

*Internship, Wright State University School of Professional Psychology,* September 1987-September 1988 (APA-approved).   Placements at Wright State University Psychological Services Center and Dayton Mental Health Center, Acute Care Unit, 2000 hours total. For duties, assessment and therapy descriptions at WSU-PSC, see below. At DMHC Acute Care Unit, duties included individual group psychotherapy and assessment on an acute care female admissions ward.   Other residency activities included training in supervision.

*Practica, Wright State University, School of Professional Psychology:*

--*University Psychological Services Center*, January 1987-August 1987. Duties included assessment and therapy (individual and group) with a college population in a college counseling center setting.

--*Dayton Mental Health Center, Forensic Unit*, June 1986-March 1987. Practicum placement.   Duties included assessment of competency to stand trial, insanity, need for maximum security hospitalization.

### *Publications*

Fulero, S. (2002).   Empirical and legal perspectives on the impact of pretrial publicity: Effects and remedies.   Law and Human Behavior, 26, 1-2 (foreward to Special Issue, S. Fulero, Issue Editor)

Fulero, S. (2002). Afterword: The past, present, and future of applied pretrial publicity research. Law and Human Behavior, 26, 127-133.

Steblay, N., Lindsay, R., Fulero, S., & Dysart, J. (2001). Eyewitness accuracy rates in sequential and simultaneous lineup presentations: A meta-analytic review. Law and Human Behavior, 25, 459-474.

Simone, S. & Fulero, S. (in press). The long and winding road: Tarasoff and the duty to protect, 1974-1999. Chapter 28 In S. Bucky (Ed.), The comprehensive textbook of ethics and law in the practice of psychology. New York: Plenum.

Simone, S., & Fulero, S. (2001). Psychologists' perceptions of their Tarasoff duty to protect uninformed sex partners of HIV-positive clients. Behavioral Sciences and the Law, 19, 423-436.

Finkel, N., Fulero, S., Haugaard, J., Levine, M. & Small, M. (2001). Everyday life and legal values: A concept paper. Law and Human Behavior, 25, 109-123.

Fulero, S. (2001). Review of the Level of Service Inventory-Revised (LSI-R). In B. Plake and J. Impara (Eds.), Mental measurements yearbook, 14th Edition (pp. 692-693). Lincoln, NE: University of Nebraska Press.

Fulero, S. (2001). Review of the Malingering Probability Scale (MPS). In B. Plake and J. Impara (Eds.), Mental measurements yearbook, 14th Edition (pp. 701-703). Lincoln, NE: University of Nebraska Press.

Wells, G., Fisher, R., Lindsay, R., Turtle, J., Malpass, R., & Fulero, S. (2000). From the lab to the police station: A successful application of eyewitness research. American Psychologist, 55, 581-598.

Technical Working Group on Eyewitness Evidence (1999). Eyewitness evidence: A guide for law enforcement (one of 34 authors/members). Washington, D.C.: United States Department of Justice, National Institute of Justice. Document No. NCJ 178240.

Fulero, S. (1999). A history of Division 41 of the American Psychological Association (American Psychology-Law Society): A Rock and Roll Odyssey. In D. Dewsbury (Ed.) Unification through division: Histories of divisions of the American Psychological Association, Volume 4 (pp. 109-127). Washington, D.C.: American Psychological Association.

Everington, C., & Fulero, S. (1999). Competence to confess: Measuring understanding and suggestibility in defendants with mental retardation. Mental Retardation, 37, 212-220.

Borum, R. & Fulero, S. (1999). Empirical research on the insanity defense and attempted reforms: Evidence toward informed policy. Law and Human Behavior, 23, 375-394.

Fulero, S., Greene, E., Hans, V., Nietzel, M., Small, M., & Wrightsman, L. (1999). Undergraduate education in legal psychology. Law and Human Behavior, 23, 137-153.

Vita, Solomon M. Fulero
Page 6

Steblay, N., Besirevic, J., Fulero, S., & Jimenez-Lorente, B. (1999). The effects of pretrial publicity on jury verdicts: A meta-analytic review. *Law and Human Behavior*, *23*, 219-235.

Wells, G., Small, M., Penrod, S., Malpass, R., Fulero, S., & Brimacombe, C.A.E., (1998). Good practice recommendations for lineups and photospreads. *Law and Human Behavior*, *22*, 603-647.

Olsen-Fulero, L. & Fulero, S. (1997). An empathy-complexity theory of rape story making. *Psychology, Public Policy,and Law, 3,* 402-427.

Turner, D. & Fulero, S. (1997). Can civility return to the courtroom? Will American jurors like it? *Ohio State Law Journal, 58,* 131-174.

Fulero, S. (1997). Review of Mistaken Identification, by Brian Cutler and Steven Penrod. New York: Cambridge University Press, 1995. *Contemporary Psychology, 42,* 395-396.

Fulero, S. & Turner, D. (1997). Using British trial procedures in American cases: A more "civil" trial? *Law and Human Behavior, 21,* 439-448.

Turner, D. & Fulero, S. (1996, July 5). Can civility return to the American courtroom? *New Law Journal*, *146*, 985-986 (abridged version of above published in England.)

Fulero, S. (1996). Review of Assessing Dangerousness: Violence by Sexual Offenders, Batterers, and Child Abusers, by Jacquelyn C. Campbell (Ed.). Thousand Oaks, CA: Sage Publications, Inc., 1995. *Criminal Justice Review, 21(1),* 102-103.

Fulero, S. (1995). Review of the Psychopathy Checklist--Revised (PCL-R). In J. Impara (Ed.), Mental measurements yearbook, 12th Edition (pp. 453-454). Lincoln, NE: University of Nebraska Press.

Penrod, S., Fulero, S., & Cutler, B. (1995). Expert psychological testimony in the United States: A new playing field? *European Journal of Psychological Assessment, 11,* 65-72.

Fulero, S. & Everington, C. (1995). Assessing retarded defendants' competency to waive Miranda rights. *Law and Human Behavior, 19,* 533-543.

Penrod, S., Fulero, S., & Cutler, B. (1995). Eyewitness expert testimony before and after *Daubert*: The state of the law and the science. *Behavioral Sciences and the Law, 13,* 229-259.

Knapp, S., VandeCreek, L., & Fulero, S. (1993). The attorney-psychologist-defendant privilege in judicial proceedings. *Psychotherapy in Private Practice*, *12(2)*, 1-15.

Finkel, N., & Fulero, S. (1992). Insanity: Making law in the absence of evidence. *International Journal of Medicine and Law*, *11,* 383-404.

Fulero, S. (1992). Legal liability in computerized assessment. In L. VandeCreek (Ed.), Innovations in Clinical Psychology, A Sourcebook, Volume 11. St. Petersburg, FL: Professional Resource Exchange.

Bremer, D., VandeCreek, L., & Fulero, S. (1992). What to do when the subpoena comes. In L. VandeCreek (Ed.), Innovations in Clinical

Case 1:02-cr-00054-DB   Document 43   Filed 08/26/2002   Page 8 of 26

Rothbart, M., Fulero, S., Jensen, C., Howard, J., & Birrell, P. (1978). From individual to group impressions: Availability heuristics in stereotype formation. *Journal of Experimental Social Psychology, 14,* 237-255.

Fischhoff, B. & Fulero, S. (1977). What makes a good explanation? (Bulletin No. DR-10). Eugene, OR: Decision Research.

Fulero, S. (1977). Review of Nejelski, P. (Ed.), Social research in conflict with law and ethics. *Victimology, 2,* 149-150.

Fulero, S. (1977). Perceived influence of endorsements on voting choices. *Journalism Quarterly, 54* 789-791.

Fulero, S. & DeLara, C. (1976). Rape victims and attributed responsibility: A defensive attribution approach. *Victimology, 1,* 512-518.

Fulero, S. & Fischhoff, B. (1976). Election results and media ratings: The "bearer of bad tidings" effect. *Communication Research, 3,* 22-36.

Rothbart, M., Dawes, R., Fulero, S., & Shaklee, H. (1975). Oregon social behavior inventory. Eugene, OR: Oregon Research Institute.

## *Convention presentations*

Fulero, S. (2001, August). Psychology and law collaboration: Benefits to state psychological associations: Ohio. Paper presented at the American Psychological Association convention, San Francisco, CA.

Fulero, S. (2000, August). The effects of stress on time overestimation: A field study. Paper presented at the American Psychological Association convention, Washington, D.C.

Steblay, N., Lindsay, R., & Fulero, S. (2000, June). A meta-analysis of sequential versus simultaneous lineup procedures. Paper presented at the annual meeting of the Society for Applied Research in Memory and Cognition (SARMAC), Miami, Florida.

Fulero, S. (2000, March). Back to the future: The 1966 ABA Standards on Free Press and Fair Trial. Paper presented at the biennial meeting of the American Psychology-Law Society, New Orleans, Louisiana.

Fulero, S. (2000, March). Lights, camera, action: The use of films and videos in the undergraduate teaching of psychology and law. Paper presented at the biennial meeting of the American Psychology-Law Society, New Orleans, Louisiana.

Fulero, S. (1999, August). HIV and the Tarasoff duty to protect: A case law review. Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Fulero, S. (1999, August). Everyday life and legal values. Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Fulero, S. (1999, July). Daubert and Kumho: Current legal status of scientific and clinical psychological expert testimony in American courts. Paper

presented at the joint American Psychology-Law Society and European Association of Psychology and Law conference, Dublin, Ireland.

Fulero, S. (1998, August). Reliability and validity: The psycholegal research agenda after Daubert. Paper presented at the American Psychological Association convention, San Francisco, California.

Simone, S. & Fulero, S. (1998, August). Psychologists' perceived Tarasoff duty to protect with HIV-positive clients. Paper presented at the American Psychological Association convention, San Francisco, California.

Fulero, S. (1998, August). Child custody evaluations under the "Ziskin Rule." Paper presented at the American Psychological Association convention, San Francisco, California.

Fulero, S. & Hagen, M. (1998, August). On the expert testimony of mental health professionals: A debate. Presentation at the American Psychological Association convention, San Francisco, California.

Fulero, S. (1998, August). The Americans With Disabilities Act and psychological and psychiatric disabilities: An overview of the EEOC Guidelines. Paper presented at the American Psychological Association convention, San Francisco, California.

Steblay, N., Besirevic, J., Fulero, S., & Jimenez-Lorente, B. (1998, August). Pretrial publicity and jury verdicts. Paper presented as part of symposium: Penrod, S. (chair), "Psychology, law, and the media," at the 24th International Congress of Applied Psychology, San Francisco, California.

Fulero, S. (1998, March). Historical review of photospread and lineup recommendations. Paper presented as part of symposium: Wells, G. (chair), Malpass, R., Brimacombe, C.A.E., Penrod, S., Fulero, S., & Small, M. "Good practice recommendations for lineups and photospreads," at the American Psychology-Law Society convention, Redondo Beach, California.

Steblay, N. & Fulero, S. (1998, March). The effects of pretrial publicity on jury verdicts: A meta-analytic review. Paper presented at the American Psychology-Law Society convention, Redondo Beach, California.

Fulero, S. & Mossman, D. (1998, March). Legal psychology and legal scholarship: A review of the reviews. Paper presented at the American Psychology-Law Society convention, Redondo Beach, California.

Fulero, S., & Malmstrom, F. (1998, March). Accuracy of the mental image reconstruction technique in eyewitness estimates of velocity. Paper presented at the American Psychology-Law Society convention, Redondo Beach, California.

Fulero, S. (1997, August). Comparison of lineup recommendations. Paper presented as part of symposium: Wells, G. (chair), Malpass, R., Brimacombe, C.A.E., Penrod, S., Fulero, S., & Small, M. "Good practice recommendations for lineups and photospreads, presented at the American Psychological Association convention, Chicago, Illinois.

Fulero, S. (1997, August).    Historical representation of legal psychology in introductory psychology texts and law reviews.  Paper presented as part of smposium: Small, M. (chair), Fulero, S., Wrightsman, L., & Grisso, T., "History of psycholegal scholarship," presented at the American Psychological Association convention, Chicago, Illinois.

Fulero, S. (1997, August).  Insanity defense reform in Ohio.  Presented as part of symposium: Fulero, S. (chair), Packer, I., O'Connor, M., Callahan, L., & Perlin, M., "Into the lion's den: Politics, science, and insanity defense reform," presented at the American Psychological Association convention, Chicago, Illinois.

Turner, D. & Fulero, S. (1996, March).  Using British trial procedures in American cases: A more "civil" trial?  Paper presented at the American Psychology-Law Society Conference, Hilton Head, S.C.

Fulero, S. (1996, March). Integration of legal psychology into the introductory psychology course: Legal psychology made "legit." Paper presented as part of symposium: Wrightsman, L., Nietzel, M., Fulero, S., Small, M., & Hans, V.  "The role of psychology and law courses in the undergraduate curriculum," presented at the American Psychology-Law Society Conference, Hilton Head, S.C.

Everington, C., & Fulero, S. (1996, March). Competence to confess:  Measuring understanding and suggestibility in defendants with mental retardation. Paper presented at the American Psychology-Law Society Conference, Hilton Head, S.C.

Fulero, S. (1996, March). Psycholegal consultation in the 90s. Paper presented at the American Psychology-Law Society Conference, Hilton Head, S.C.

Penrod, S., Fulero, S., Cutler B., & Linz, D. (1995, September).  Regulating the flow of expert psychological evidence to the courts: Recent developments in American law.  Paper presented at the Fifth European Conference on Psychology and Law, Budapest, Hungary.

Fulero, S. & Everington, C. (1995, August).  Competency to waive Miranda rights in defendants with mental retardation.  Paper presented at the American Psychological Association convention, New York, N.Y.

Fulero, S. (chair/presenter), Lager, D. & Triplett, M.  (1994, August).  The lamb silenced:    A critical analysis of criminal profiling expert evidence. Symposium presented at the American Psychological Association convention, Los Angeles, California.

Fulero, S., Merriman, P., Wester, W. (1994, April).  Memory:  Impact on Therapeutic Techniques, Practice Risks, Research, and Pending Ohio Legislation.  Symposium presented at the Ohio Psychological Association spring convention, Columbus, Ohio, April 21, 1994.

Fulero, S. & Everington, C. (1993, August). Assessing retarded defendants' competency to waive Miranda rights.  Paper presented at the American Psychological Association convention, Toronto, Ontario, Canada.

Martin, T., Fulero, S., & Davis, H. (1993, August). A survey of judges' opinions regarding novel trial techniques. Paper presented at the American Psychological Association convention, Toronto, Ontario, Canada.

Everington, C., Wulff, K., & Fulero, S. (1992, September). Issues in training of competence to stand trial in offenders with mental retardation. Paper presented at the State Mental Health Forensic Directors convention, Portland, Oregon.

Praeger, I., Cutler, B., Fulero, S., Rogers, R., & Bagby, R. (1992, August). Effects of varying levels of expert testimony on insanity verdicts. Paper presented at the American Psychological Association convention, Washington, D.C.

Fulero, S., & Vandecreek, L. (1992, August). Privilege in group, marital, and family therapy: A review of cases. Paper presented at the American Psychological Association convention, Washington, D.C.

Fulero, S. (1991, August). Chair, "Forensic evaluation." Panel presented at the American Psychological Association convention, San Francisco, California.

Fulero, S., et al. (1991, May). Panel Chair, The Americans with Disabilities Act. Symposium presented at the Ohio State Bar Association convention, Columbus, Ohio.

Cutler, B., Hosch, H., Bothwell, R., Brock, P., Steblay, N., McCauley, M., McAllister, H., & Fulero, S. (1991, March). "Theoretical and practical issues in the assessment of eyewitness testimony." Symposium presented at the Southeastern Psychological Association convention, New Orleans, Louisiana.

Fulero, S., & Finkel, N. (1990, August). Barring ultimate issue testimony: An "insane" rule? Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Cutler, B., Praeger, I., & Fulero, S. (1990, August). Jury selection in insanity cases. Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Fulero, S., Wulff, K., & Olsen-Fulero, L. (1990, August). Factor analysis of the Attribution of Rape Blame Scale. Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Fulero, S. (1989, August). Recent developments in the duty to protect. Paper presented at the American Psychological Association convention, New Orleans, Louisiana.

Olsen-Fulero, L., Fulero, S., & Wulff, K. (1989, August). Who did what to whom? Modeling rape jurors' cognitive processes. Paper presented at the American Psychological Association convention, New Orleans, Louisiana.

Fulero, S. & Wilbert, J. (1988, August). Record-keeping policies: A survey of practitioners. Paper presented at the American Psychological Association convention, Atlanta, Georgia.

Fulero, S., Buckhout, R., Cutler, B., Loftus, E., Kassin, S. & Penrod, S., (1988, August). Critical perspectives on the 'battle of eyewitness experts.' Discussion hour presented at the American Psychological Association convention, Atlanta, Georgia.

Fulero, S. (1988, March). Liability risks in computerized assessment. Part of symposium, Fulero, S., Aaronson, A., Brodsky, S., & Hofer, P., "Legal issues in computerized assessment," American Psychology-Law Society, Miami, Florida.

Wilbert, J. & Fulero, S. (1987, August). The effect of the malpractice "crisis" on the practice of clinical psychology: A survey of practitioners. Paper presented at the American Psychological Association convention, New York, NY.

Evans, M., Fulero, S. & Rothbart, M. (1978, May). Mnemonic factors in the maintenance of social stereotypes. Paper presented at the Western Psychological Association convention, Los Angeles, CA.

Fulero, S. (1977, April). Perceived influence of editorial endorsements: An exception to Jones and Nisbett? Paper presented at the Western Psychological Association convention, Seattle, WA.

Fulero, S. (1977, April). Similarity and respectability as factors in the attribution of responsibility to rape victims. Paper presented at the Western Psychological Association convention, Seattle, WA.

Fulero, S., Howard, J., Jensen, C., & Rothbart, M. (1977, April). Extremity effects in stereotype formation. Paper presented at the Western Psychological Association convention, Seattle, WA.

Fulero, S. & Rothbart, M. (1976, May). Attribution of causality for important events: The profound motive fallacy. Paper presented at the Western Psychological Association convention, Los Angeles, CA.

Fulero, S., (1976, May). Messenger evaluation and news valence: The "bearer of bad tidings" revisited. Paper presented at the Western Psychological Association convention, Los Angeles, CA.

Fulero, S. (1975, April). Differential evaluation of the "bearer of good tidings" and the "bearer of bad tidings." Paper presented at the Western Psychological Association convention, Sacramento, CA.

DeLara, C. & Fulero, S. (1974, April). Attribution of responsibility to a rape victim as a function of similarity. Paper presented at the Western Psychological Association convention, San Francisco, CA.

**IN THE COURT OF COMMON PLEAS,        COUNTY, OHIO**

**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **STATE OF OHIO,** | ) | |
| | ) | |
| Plaintiff | ) | CASE NO. |
| | ) | |
| -vs- | ) | AFFIDAVIT |
| | ) | |
| | ) | |
| Defendant | ) | |

**STATE OF OHIO**   ) SS:
**COUNTY OF**        )

SOLOMON M. FULERO, Ph.D., J.D., being first duly sworn, deposes and states as follows:

1. **QUALIFICATIONS.** I am both a licensed psychologist and an attorney. My present academic positions include Clinical Assistant Professor of Psychology at the Wright State University Schools of Professional Psychology and of Medicine, and Professor of Psychology at Sinclair College in Dayton, Ohio. In addition to my academic appointments, I am a practicing attorney in the State of Ohio, having been admitted to the Bar in May 1980, and to the Federal Bar (Southern District of Ohio, Western Division) in June 1980. I am also a practicing psychologist, and a frequent consultant to attorneys on issues of psychology and law, including eyewitness identification.

My educational background is as follows: I received a Bachelor of Arts in psychology/sociology with Honors from the University of Maryland (1973); a Master of Arts in Psychology (1975) and a Doctor of Philosophy in Psychology (1979) from the University of Oregon; and a Juris Doctor from the University of Oregon School of Law (1979). I received a Russell Sage Foundation Law and Social Science Residency Fellowship in 1977-78 and 1978-79, which I did at the University of Oregon School of Law. I am a member of the following professional organizations: American Psychological Association (elected Fellow for distinguished contributions to the field, 2000), Midwestern Psychological Association, Society for Personality and Social Psychology, Dayton Bar Association, Greene County Bar Association, and the American Psychology-Law Society (elected APA representative, 2000, and President, 2002). I have testified before the Ohio Senate Judiciary Committee on psychology and law issues, and was appointed by then-Lieutenant Governor Michael DeWine to a seven-member blue ribbon panel on the issues of competency to stand trial and sanity (our work later resulted in S.B. 285, making several changes to the law in those areas). I have taught

numerous classes and have given numerous seminars, workshops, and presentations on law and psychology, including the issue of eyewitness identification. I have consulted with both NBC (Dateline) and CBS (48 Hours), and appeared in shows on the topic of eyewitness identification. My own research has resulted in some 40-50 publications in several major journals in my field, including the *Journal of Experimental Social Psychology, Law and Human Behavior, Behavioral Sciences and the Law,* and *Professional Psychology,* in the area of psychology and law, including eyewitness identification. I act as a peer reviewer for several scientific journals as well as for grant proposals submitted to government agencies in the area of psychology and law. I am on the Editorial Board of the major journal in my field, *Law and Human Behavior.* I am the author of *Ohio Psychology and Law Handbook,* published in 1988 by Ohio Psychology Publishing Company. Finally, I write a continuing column in the *Ohio Psychologist,* the official publication of the Ohio Psychological Association. The column deals with psychology and law, including eyewitness identification.

Most recently, I served on a panel apponted by Attorney General Janet Reno, the Technical Working Group on Eyewitness Evidence (TWGEE). This panel was constituted after the United States Department of Justice, through the National Institute of Justice, published a document entitled Convicted by Juries, Exonerated by Science in June 1996 (NIJ Document No. 161258). This document was a study of the first 28 cases in which defendants convicted at jury trials were later definitively exonerated by the new DNA technology. Of these cases, approximately 24 were cases of mistaken identification. The TWGEE panel, composed of 34 law enforcement officers, prosecutors, defense attorneys, and eyewitness scientists, completed a document entitled Eyewitness evidence: A guide for law enforcement, published by the National Institute of Justice in October 1999 (NIJ Document No. 178240).

In addition to the numerous cases in which I have consulted on the issue of eyewitness identification, I have testified as an expert witness on the psychology of eyewitness identification in criminal trials in the following cases:

I. State of Ohio, Municipal Courts:

*City of Dayton v. Click,* Dayton Municipal Court, Case No. 86-CRB-7608 (Duncan, J.)
*City of Cincinnati v. Flauto,* Hamilton County Municipal Court, Case Nos. C98-CRB-21250A-D (Taylor, J.)

II. State of Ohio, Common Pleas Courts

*State v. Barnett,* Montgomery County Court of Common Pleas, Case No. 80CR1953 (Kessler, J.)
*State v. Alford,* Montgomery County Court of Common Pleas, Case No. 83CR2225 (Meagher, J.)
*State v. Harris,* Montgomery County Court of Common Pleas, Case No. 84 CR 319 (Meagher, J.)
*State v. Jones,* Montgomery County Court of Common Pleas, Case No. 84 CR 62 (Kessler, J.)
*State v. Swofford,* Montgomery County Court of Common Pleas, Case No 84CR1691 (Yeazel, J.) (motion to suppress)
*State v. Cook,* Hamilton County Court of Common Pleas, Case No. B-901379 (Ruehlman, J.)
*State v. Barron,* Montgomery County Common Pleas Court, Case No. 90CR1339 (Kilpatrick, J.)

*State v. McCrary*, Hamilton County Court of Common Pleas, Case No. B93-6444 (Ruehlman, J.)
*State v. Moore,* Montgomery County Court of Common Pleas, Case No. 90 CR 2843 (Porter, J.)
*State v. Knight*, Franklin County Court of Common Pleas, Case No. 93CR-04-2364 (Shewart, J.)
*State v. Brown,* Montgomery County Court of Common Pleas, Case No. 91 CR 711 (Foley,J.)
*State v. Walter,* Summit County Juvenile Court, Case No. 91-5-1814 (Robinson, J.)
*State v. Beitzel,* Tuscarawas County Court of Common Pleas, Case No. 90CR-070-199 (Lile, J.)
*State v. Rowe,* Franklin County Court of Common Pleas, Case No. 91CR-07-3955 (Cain, J.)
*State v. Layton,* Lucas County Court of Common Pleas, Case No. 90-6410 (Grigsby, visiting J.)
*State v. Ford,* Montgomery County Court of Common Pleas, Case No. 86 CR 51 (McMillan,J.)
*State v. Robertson,* Montgomery County Common Pleas Ct., Case No. 88CR3178 (McMillan, J.)
*State v. Miller,* Lucas County Court of Common Pleas, Case No. CR93-5161(Franks, J.)
*State v. Creemer*, Hamilton County Court of Common Pleas, Case No. B-920392 (Nurre, J.)
*State v. Chilton,* Montgomery County Common Pleas Ct., Case No. 86CR2520 (Riley, visiting J.)
*State v. Hart,* Tuscawaras County Court of Common Pleas, Case No. 90CR 080225 (O'Farrell, J.)
*State v. Roundtree,* Wayne County Court of Common Pleas, Case No. 95-CR-0237 (Brown, J.)
*State v. Simone,* Champaign County Court of Common Pleas, Case No 89 CR 13 (Wilson, J.)
*State v. Pierce,* Athens County Court of Common Pleas, Case No. 89 CR    (Goldsberry, J.)
*State v. Mallory*, Montgomery County Court of Common Pleas, Case No. 93 CR 3341 (Dodge, J.)
*State v. Konoff,* Ottawa County Court of Common Pleas, Case No. 3959 (Thierry, J.)
*State v. Wilson,* Lake County Court of Common Pleas, Case No 92 CR 14 (Jackson, J.)
*State v. Storer,* Clark County Common Pleas, Case No. 87CR212 (Henderson, J.)(trial and retrial)
*State v. Ligier*, Montgomery County Court of Common Pleas, Case No. 88 CR 3429 (Meagher, J.)
*State v. Radford,* Montgomery County Common Pleas Ct., Case No. 88 CR 3040 (Kessler, J.)
*State v. Dowd,* Lake County Court of Common Pleas, Case No. 89 CR 13 (Jackson, J.)
*State v. Craft*, Auglaize County Court of Common Pleas, Case No. 93-C-22 (Rumer, visiting J.)
*State v. Baird*, Franklin County Court of Common Pleas, Case No. 95-CR-6077 (Johnson, J.)
*State v. Johnson,* Lucas County Court of Common  Pleas, Case No. CR-88-6580 (Doneghy, J.)
*State v. Green,* Delaware County Court of Common  Pleas, Case No. 83 CR 121 (Shaw, J.)
*State v. Everette,* Montgomery County Court of Common  Pleas, Case No. 91 CR   (Foley, J.)
*State v. Johnson,* Lucas County Court of Common Pleas, Case No.        (Knepper, J.)
*State v. Elliott,* Tuscarawas County Common Pleas Ct., Case No. 91-CR-030050 (O'Farrell, J.)
*State v. Lytle,* Summit County Common Pleas Ct., Case No. CR95-08-2080 (Schneiderman, J.)
*State v. Ross,* Mahoning County Court of Common Pleas, Case No. 96-CR-192 (Krichbaum, J.) (penalty phase of capital case)
*State v. Hurston*, Montgomery County Common Pleas, Case No. 96CR1618 (Langer, J., and Ingram, visiting J.)
*State v. McDade*, Lake County Court of Common Pleas, Case No. 96-CR-00327 (Mitrovich, J.)
*State v. Robinson*, Montgomery County Court of Common Pleas, Case No. 97-CR-581 (Foley, J.)
*State v. Auge*, Franklin County Court of Common Pleas, Case No. CR-95-4115 (Sadler, J.)
*State v. Banks,* Tuscarawas County Common Pleas Ct., Case No. 97-CR-040055 (motion to suppress and trial) (O'Farrell, J.)
*State v. Hairston*, Montgomery County Court of Common Pleas, Case No. 98-CR-238 (Petzold, J.)
*State v. Beckham*, Montgomery County Court of Common Pleas, Case No. 97-CR-3557 (Donovan, J.)
*State v. Sinkfield*, Montgomery County Court of Common Pleas, Case No. 96-CR-395 (Froelich, J.)
*State v. Nickelberry*, Cuyahoga County Court of Common Pleas, Case No. CR-370640 (Matia, J.)
*State v. Pozo*, Hamilton County Court of Common Pleas, Case No. B-9808966 (O'Connor, J.) (trial and retrial)

*State v. Nichols*, Franklin County Court of Common Pleas, Case No. 95CR-07-4299 (Cain, J.)

*State v. Brust*, Franklin County Court of Common Pleas, Case No. 97CR-08-4790 (Cain, J.)

*State v. McAleese,* Summit County Court of Common Pleas, Case No. 99-06-1327 (Schneiderman, J.)

*State v. Mobley*, Montgomery County Court of Common Pleas, Case No. 00-CR-1841 (Tucker, J.)

*State v. Diaz-Rivera*, Montgomery County Court of Common Pleas, Case No. 00-CR-2397 (Gowdown, J.)

*State v. Roper*, Summit County Court of Common Pleas, Case No. 00-04-0945 (Murphy, J.) (three separate times before juries in re-trials)

*State v. Fisher*, Franklin County Court of Common Pleas, Case No. 99CR-12-7215 (McGrath, J.)

*State v. Stevens*, Montgomery County Court of Common Pleas, Case No. 00-CR-3154 (Yarborough, visiting J.)

*State v. Harris*, Franklin County Court of Common Pleas, Case No. 99CR-284 (Watson, J.)

*State v. Moore*, Ashtabula County Court of Common Pleas, Case No. 2000-CR-237 (Yost, J.)

*State v. Reynolds*, Montgomery County Court of Common Pleas, Case No. 00-CR-3337 (Gorman, J.)

*State v. Bannister*, Hamilton County Court of Common Pleas, Case No. B-0109713 (Tracey, J.)

*State v. Reese*, Hamilton County Court of Common Pleas, Case No. B-0108425 (West, J.)

*State v. Bennie*, Hamilton County Court of Common Pleas, Case No. B-0108049 (Nurre, J.)

*State v. Taylor*, Hamilton County Court of Common Pleas, Case No. B-0105313 (Cartolano, J.)

*State v. Johnson*, Cuyahoga County Court of Common Pleas, Case No. CR410590 (Gallagher, J.)

*State v. Suarez*, Wood County Court of Common Pleas, Case No. 01-CR-117 (Kelsey, J.)

*State v. Barber*, Montgomery County Court of Common Pleas, Case No. 00-CR-XX (Langer, J.)

*State v. Watson*, Hamilton County Court of Common Pleas, Case No. B-00-    (Dinkelacker, J.)

*State v. Richardson*, Hamilton County Court of Common Pleas, Case No. B-9909592  (Crush, J.)

*State v. Smith*, Hamilton County Court of Common Pleas, Case No. B-0010225 (      , J.)

*State v. Carter*, Hamilton County Court of Common Pleas, Case No. B-0005602 (      , J.)

*State v. Myers*, Franklin County Court of Common Pleas, Case No. 00CR-2664 (Bessey, J.)


III.   Federal Courts (Ohio, New York, Kentucky, Pennsylvania, Virgin Islands, New Jersey, Michigan, District of Columbia)

*United States v. Armstrong,* United States District Court, Southern District of Ohio, Western Division, Case No. CR-3-84-64 (Rice, J.)

*United States v. Stewart,* United States District Court, Southern District of Ohio, Western Division, Case No. CR-3-84-65 (Rice, J.)

*United States v. Radford,* United States District Court, Southern District of Ohio, Eastern Division, Case No._____, (Graham, J.)

*United States v. Robinson,* U.S. District Court, Northern District of Ohio, Case No._____, (Aldrich, J.)

*United States v. Walker,* United States District Court, Northern District of New York, Case No. 94-CR-328 (McAvoy, J.)

*United States v. Miller,* United States District Court, Eastern District of Kentucky at Covington, Case No. 84-24 (Bertlesman, J.)

*United States v. Sebetich,* United States District Court, Western District of Pennsylvania, Case No. 84-53 (Downing hearing, McCune, J.)

*United States v. Tyler,* United States District Court, Western District of Pennsylvania, Case No. 87-128, (Downing hearing, Ziegler, J.)

*United States v. Lake*, United States District Court of the Virgin Islands, Division of St. Thomas

and St. John, Case No. CR96-161 (Moore, J.)

*United States v. Thompson*, United States District Court of the Virgin Islands, Division of St. Thomas and St. John, Case No. CR96-95 (Moore, J.)

*United States v. Nunes*, United States District Court, District of New Jersey, Case No. CR96-231(WHW) (Walls, J.)

*United States v. Casseus and Fleurantin*, United States District Court of the Virgin Islands, Division of St. Thomas and St. John, Case No. CR99-33 (Moore, J.)

*United States v. London*, United States District Court, Western District of Pennsylvania, Case No. Criminal 01-01-Erie (McLaughlin, J.) (motion to suppress and trial)

*United States v. Withers*, United States District Court, Southern District of Ohio, Case No. CR3-00-67 (Rice, J.) (motion to suppress)

*United States v. Dyer*, United States District Court, Northern District of Ohio, Case No. 1:00CR00062 (Wells, J.) ("earwitness" testimony)

*United States v. Ford*, United States District Court, Eastern District of Michigan, Case No. 00-80074 (Edmunds, J.)

*United States v. Smithers*, United States District Court, Eastern District of Michigan, Case No. 97-80248 (Cohn, J.) (see 212 F.3d 306 (6th Cir. 2000)

*United States v. Stewart,* United States District Court, Western District of Kentucky, Case No. 4:99CR-11-M (McKinley, J.)

*United States v. Owens*, United States District Court, District of Columbia, Case No. 01-258, (Kessler, J.)

*United States v. Stamper,* United States District Court, Western District of Kentucky, Louisville Division, Case No. 3:00CR-116-J (Johnstone, J.)

*United States v. Ovalle,* United States District Court, Southern District of New York, Case No. (Koeltl, J.)

*United States v. Rodriguez,* United States District Court, Southern District of New York, Case No.    00 CR 949 (Batts, J.)


IV.  Other state courts (Illinois, Virginia, West Virginia, Wisconsin, Indiana, New York, Virginia, Missouri, Michigan, Texas, South Carolina, District of Columbia, Oklahoma, Delaware, Maryland, Colorado, Virgin Islands Territorial Court, Kansas)

*State of Illinois v. Enis,* Lake County Circuit Court, Case No. 89-_____, (Motion hearing, Gosharian, J.); see also *People v. Enis,* 564 N.E. 2d 1155, 139 Ill.2d 264 (1990).

*State of Wisconsin v. Miller,* Fond du Lac County Circuit Ct.,Case No. 90CF257 (Mickiewicz, J.)
*State of West Virginia v. Hawkins*, Monongalia County Circuit Ct., Case No. 93F13 (Starcher, J.)
*Sanamiego v. State of Indiana,* Adams Cty. Superior Ct., Case 01C01-8706-CF-018 (Caffee, J.)
*Williams v. State of Indiana,* Allen County Superior Ct., Case 02D04-9208-CF-431 (Surbeck, J.)
*State of Indiana v. Floyd*, Hamilton County Superior Ct, Case 29D02-9705-CF-039 (Barr, J.)
*State of Indiana v. Carter*, Martin County Circuit Ct., Case No. 51C01-9309-CF-79 (Howell, J.)
*People of the State of New York v. Rojas*, Supreme Court of New York County, Part 78, Case No. 01868-91 (Leff, J.)

*People of the State of New York v. Melendez*, Rensslaer County Court, Case No. B-10702 (McGrath, J.)

*People of the State of New York v. Smith*, Supreme Court of New York County, Part 31, Case No. B-10702 (Yates, J.)—see written opinion regarding admissibility, 743 N.Y.S.2d 246 (2002)

*People of the State of New York v. Pabellon*, Supreme Court of New York County, Part 31, Case No. 08400-2000 (Yates, J.)

*People of the State of New York v. McCrayer*, Supreme Court of Erie County, Case No. 01-0224-001 (Drury, J.)

*State of Missouri v. Dailey*, St. Louis City Circuit Court, State of Missouri, Cause No. 971-0611A, Division No. 16 (Baker, J.) (pre-trial hearing)

*State of Michigan v. Smith*, Washtenaw County Circuit Court, Case No. 96-6543-FC (Shelton, J.)
*Commonwealth of Virginia v. Currie*, Circuit Court for the City of Alexandria, Case No. CF970531 (Swersky, J.)

*State of Texas v. Ramirez*, 154th District Court of Lamb County, Texas, Case No. 3084 (Klein, J.)
*State of South Carolina v. Thompson*, Florence County General Sessions Court, Case No. 98-GS-21-347 (Floyd, J.)

*State of South Carolina v. Johnson*, Richland County General Sessions Court, 5th Judicial Circuit, Case No. 99-GS-40-40014 (Barber, J.)

*State of South Carolina v. Green*, Richland County General Sessions Court, 5th Judicial Circuit, Case No. G347189 (Manning, J.)

*United States of America v. Battle*, District of Columbia Superior Court, Case No. F-2951-98 (Winston, J.)

*State of Oklahoma v. Cooksey*, Tulsa County District Court, Case No. CF-TU-98-003529-51 (Harris, J.)

*State of Maryland v. Wesley*, Baltimore County Circuit Court, Case No. DP-99-14-09 (Cox, J.)

*State of Colorado v. Spanks*, El Paso County District Court, Division 1, Case No. 97CR3843 (Kennedy, J.)

*State of Delaware v. Garden*, Delaware Superior Court in and for New Castle County, Case No. 99-12015068 (Babariaz, J.)

*Commonwealth of Virginia v. Stawicki*, Loudon County Circuit Court, Case No. 13985 (Hoss, visiting J.)

*State of Colorado v. Reed*, Boulder County District & County Court, Case No. 2001 CR-000977 (Dubofsky, J.)

*State of Maryland v. Greene*, Montgomery County Circuit Court, Case No. XXXXX (McGuckian, J.)

*State of Indiana v. Barker*, Marion County Circuit Court, Case No. 49G04-0102-CF-040849 (Gifford, J.)

*Government of the Virgin Islands v. Motta*, Territorial Court of the Virgin Islands, Division of St. Croix, Case No. 260/2001 (Cabret, J.)

*Davis v. State of Kansas*, Douglas County District Court, Case No. 99CR902 (Malone, J.) (post-conviction hearing)


V. Administrative hearings (Michigan)

*In the matter of Insurance Bureau, Petitioner, v. Mark Sager, Respondent,* Docket No. 98-0125, Enforcement Case No. 96-116, (Jones, Adminstrative Law Judge)

VI. Written decisions regarding the admissibility of my testimony

See *United States v. Smith,* 736 F.2d. 1103 (1984), a federal Sixth Circuit Court of Appeals Case, and *Moore v. Tate,* Case No. C-3-86-366, D.C. S.D. Ohio, decided Aug. 11, 1988, both of which addressed the issue of the admissibility of my testimony. In the latter, the federal magistrate ruled the exclusion of my testimony in a state court to be a violation of the defendant's federal constitutional rights, although the Sixth Circuit later overruled, 882 F.2d 1107 (1989).
In *United States v. Smithers*, 212 F.3d 306 (2000), the Sixth Circuit reversed and remanded a conviction involving the denial of my testimony by a District Court judge in Detroit (upon retrial, testified and the defendant was acquitted). More recently, in *State v. Echols,* 128 Ohio App.3d

677 (1998), originally Hamilton County Court of Common Pleas Case No. B-9603651 (Tracey, J.), the First District Court of Appeals of Ohio overturned a conviction based in part on the exclusion of my testimony. Also recently, the Second District Court of Appeals in Ohio, in a post-conviction proceeding, has ruled that failing to call an expert witness on eyewitness identification could amount to ineffective assistance of counsel, *State v. Chinn*, 1998 WR 518073). Finally, in New York state, a recent written opinion ruled my testimony admissible (see *People v. Smith*, 743 N.Y.S.2d 246 (2002)).

2. **SCIENTIFIC FOUNDATION OF TESTIMONY.** In an effort to clarify the scope and intent of my testimony in such cases, I wish to make clear in this section the scientific basis of this scientific contributions of psychologists to the understanding of human visual perception, with special emphasis on the social and cognitive factors that affect eyewitness accuracy. The main points of my testimony are outlined more specifically in the last part of this Affidavit. These factors are backed up by specific experimental research by psychologists in social psychology, experimental psychology, and cognitive psychology, dating back to as far as 1895 and continuing on today. This ongoing research amounts to some 300-400 articles per year, as well as at least 10 books specifically on the topic of eyewitness testimony published in the last 15 years. It is this research from which I draw these findings and upon which I base my opinions and other conclusions.

This scientific research typically utilizes previously tested filmed crimes or accidents to test hundreds of eyewitnesses. This allows us to check and verify the accuracy of a given eyewitness against an objective standard of accuracy. In such studies, we learn a great deal about the typical response of the average witness under the conditions that exist in the crime or accident situation. All witnesses are then tested with carefully constructed line-ups and/or photospreads under controlled conditions. Thousands of experimental subjects have undergone these procedures. These studies combine to permit an expert to provide the court and the jury with a more complete understanding of the psychology of eyewitness identification. Further, and more importantly, this scientific research has highlighted a critical issue that makes expert testimony in this area vital for jurors who must make all-important decisions about the accuracy of an eyewitness identification: laypersons acting as jurors hold many misconceptions about eyewitness testimony and eyewitness identification. In other areas, they may be aware of relevant factors, but may discount or inappropriately weigh those factors. It is to this issue that I turn next.

3. **POWER OF EYEWITNESS TESTIMONY.** The impact of eyewitness identification has been noted by legal experts for many years. The paradigmatic eyewitness testimony situation is where the crime victim takes the stand during the trial, points to the defendant in front of the jury, and says, "He's the one--I'll never forget that face!"

Indeed, lawyers and judges report that eyewitness testimony is powerful and dramatic evidence, and its presence or absence will often determine whether or not a case is pursued initially as well as whether or not a conviction is obtained. In England, a

committee was established in 1974 to review the problem of eyewitness identification, chaired by the noted jurist Lord Devlin. The final report of Devlin committee was issued in April 1976. This committee examined all lineups ("identification parades") held in England and Wales in the year 1973. There were a total of 2,116 lineups. After being identified in a lineup, 850 people were prosecuted, and 82% of those were convicted. Even more interesting is the fact that 347 people were prosecuted even though the only evidence against them was the identification by one (169 cases) or more (178 cases) eyewitnesses. Of these 347 cases, 74 % resulted in conviction. Clearly, eyewitness testimony is extremely powerful.

       This conclusion is supported by scientific research. The ideal way to determine the power of an eyewitness identification would be to conduct a trial that contains such an identification and then to compare the outcome of the trial to the identical trial conducted without it. While this is impossible in actual cases, it is possible in the laboratory. Dr. Elizabeth Loftus of the University of Washington, one of the foremost authorities in this field and psychologist who has testified as an expert in over sixty cases, reports in her book *Eyewitness Testimony* (Harvard University Press, 1979) a study she conducted using 150 students asked to play the role of jurors trying a criminal case. Each student received a written description of a grocery story robbery in which two people were killed, and a summary of the evidence and arguments presented at the trial. One group of subjects, 50 in number, was told that there were no eyewitnesses to the crime.

       Based on the other evidence in the case, 10% of these found the defendant guilty. A second group of 50 subjects was given the same evidence as the first group, with one addition: the store clerk's testimony that he has seen the defendant shoot the two victims. With this addition, full 72% found the defendant guilty--a testimonial to the power of an eyewitness. But even more interesting were the result of the third group of 50 subjects, who were also told about the store clerk, but were given the additional information that on cross-examination, the clerk admitted that on the day of the robbery he had not been wearing his glasses, and that his vision was worse than 20/400 without his glasses (so that he could not have seen the perpetrator's face). The clerk, however, maintained his identification confidently (we will address this factor later). Under this condition, some 68% of the jurors still voted guilty.

       Clearly, jurors weigh an eyewitness identification, particularly one made with a great deal of certainty, more heavily than virtually any other form of evidence. Given this fact, what does psychology have to say about eyewitness identification? As several researchers have noted, the research shows that eyewitness testimony is less reliable than is commonly assumed. Eyewitnesses to crimes and accidents are being asked to do something that normal human memory is not well-designed to do. When we look at the power of eyewitness evidence in the light of the factors that have been shown to affect accuracy, it is clear that expert testimony in this area can be of tremendous assistance to a finder of fact faced with what is always a difficult decision. Indeed, one of the things we have discovered in the research is that fact finders hold many myths and misconceptions about eyewitness identifications. It is that area to which I turn next.

4. **MYTHS AND MISCONCEPTIONS HELD BY LAY JURORS.** Expert psychological testimony on eyewitness identification is sometimes resisted (i.e., ruled inadmissible) by judges on the ground the testimony is an improper subject for expert testimony, since the reliability of an eyewitness and the factors that affect or "common sense" of the average layperson. As Dr. Loftus (see above) has noted, that is equivalent to saying that a psychologist cannot tell the jurors in an identification case anything they do not already know. This, however, is an assertion which is amenable to empirical test.

Dr. Loftus has collected empirical data on just what people do know about eyewitness identification. Some 500 registered voters in the State of Washington (the population from which prospective jurors are drawn, as in Ohio) were asked to fill out a questionnaire testing what they knew about various factors that have been identified by psychologists as affecting eyewitness reliability. The results showed that in most cases, contrary to judge's assumptions about the "common sense" of jurors, there is an appalling amount of misinformation and myth. For example, the subjects were asked the following question:

Suppose that a man and a woman both witness two crimes. One involves violence and the other is nonviolent. Which statement do you believe is true?

(a) Both the man and the woman will remember the details of the violent crime better.

(b) Both the man and the woman will remember the details of the nonviolent crime better.

(c) The man will remember the details of the violent crime better and the woman will remember the details of the nonviolent crime better.

(d) The woman will remember the details of the violent crime better and the man will remember the details of the nonviolent crime better.

Of Dr. Loftus' subjects, only 18% correctly picked (b). In a study by Drs. Clifford and Scott (1978), both men and women found it harder to recall information about a violent event than a nonviolent event. At a recent Ohio Psychological Association workshop which I conducted, only 41% of the participants, who were primarily Ph.D. clinical psychologists (though without much background in this area), were correct. Other questions covered additional areas of juror misconception, such as cross-racial identification (only 55% of the subjects correctly knew that a white person would have a more difficult time identifying a black person than they would identifying a white person); stress (fully 1/3 felt that stress did not interfere with eyewitness ability, and in fact 18% felt that stress would improve recall, an assertion which has clearly been shown to be incorrect); weapons focus (only 40% indicated that weapons focus would have an impact on an eyewitness), and so forth. All of these factors are addressed in my testimony (see last section of this Affidavit).

Another common misconception, one which is crucial in virtually all cases, is that an eyewitness testifying on the witness stand who expresses a great deal of confidence in his or her identification is more likely to be accurate than an eyewitness who indicates some hesitancy an uncertainty. Contrary to this "common sense" misconception, a large number of studies indicated that in fact the confidence of the eyewitness bears virtually

no relationship to the accuracy of the identification--a confident eyewitness is just as likely to be incorrect as a hesitant one. What makes this even more appalling is that the United States Supreme Court, in *Neil v. Biggers,* 409 U.S. 188, 93 S. Ct. 575, 34 L.Ed.2d 401 (1972), has mandated this factor as one of the five factors that judges are instructed to weigh in their assessment of whether or not to allow an eyewitness identification into evidence at a trial.

In summary, the available evidence clearly shows that the sort of information that can be provided to jurors by expert psychological testimony on eyewitness reliability is simply not within the "ken of the average layperson." This matter is discussed at length, along with the research on myths and misconceptions held by laypersons and the ability of expert testimony in this area to assist jurors, in Leippe (1995) and Penrod, Fulero, & Cutler (1995). It is important to note that the testimony of the psychologist is not directed to the question of whether any one eyewitness is or is not correct. That is the province of the jury. The testimony of the psychologist is admitted as evidence probative of the weight of that witness' testimony (or its admissibility, at a motion to suppress hearing).

5. ADMISSIBILITY OF EXPERT TESTIMONY  Rule 702 of the Ohio Rules of Evidence states:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

In addition, in *Ragone v. Vitali & Beltrami, Jr., Inc.,* 42 Ohio St. 2D 161 (1975), the Ohio Supreme Court stated:

"In all proceedings involving matters of scientific, mechanical, professional or other like nature, requiring special study, experience or observation not within the common knowledge of laymen, expert testimony is admissible to aid the court or the jury in arriving at a correct determination of the litigated issue."

Third, in *United States v. Smith,* 736 F.2d 1103, 35 Crim. Law Rptr. 2224 (1984), the United states Court of Appeals for the Sixth Circuit, in dealing with my testimony, set forth a four-pronged test in deciding the admissibility of this testimony: (1) Is the witness a qualified expert? (2) Is his expertise in a proper subject? (3) Does his testimony conform to a generally accepted explanatory theory? (4) Does its probative value outweigh any possible prejudicial effect?  In that case, the Court fairly clearly decided in the affirmative on counts. Indeed, in a subsequent case, *U.S. v. Armstrong,* Judge Rice (the trial judge in the Smith case) did allow me to testify before the jury on the basis of the *Smith* ruling.

Last, the Ohio Supreme Court has now approved the use of expert testimony on eyewitness identification, in *State v. Buell,* 22 Ohio St. 3d 124 (1986), in which the Court

held that:

"...based on our analysis of these cases and Evid. R. 702, the expert testimony of an experimental psychologist concerning the variables or factors that may impair the accuracy of a typical eyewitness identification is admissible under Evid. R. 702." *Buell,* at 131.

In considering the overall state of reported case law on the admissibility of this type of testimony, it is important to keep in mind the fact that the posture of the cases on appeal on this issue is quite deceiving. That is, if the trial judge rules the testimony admissible, the psychologist testifies, and regardless of the outcome of the case, no issue is raised on appeal. If, however, the trial judge rules the testimony inadmissible, and the defendant is convicted, then and only then do appeals courts face the issue. As a result, reported cases show only the cases in which the testimony is not allowed. These cases are, by and in large, prior to 1981. Since then, and even shortly prior to that time, the legal commentators have increasingly approved the use of expert testimony on eyewitness identification (see Kessler, J. ID Experts in Criminal Trials, 30 Dayton Bar Briefs, No. 10, p. 15 (1981); Woocher, Did Your Eyes Deceive You? 29 Stanford Law Review 969 (1977); Salisbury, Eyewitness Identifications: A New Perspective on Old Law, 15 Tulsa Law Journal 38, 64-65 (1979); Tyrell and Cunningham, Eyewitness Credibility: Adjusting the Sights of the Judiciary, 37 Alabama Lawyer 563, 586-588 (1976); Note: Expert Testimony on Eyewitness Perception, 82 Dickinson Law Review 465 (1978); Sobel, *Eyewitness Identification,* Boardman, 1976, supplement, page 87.

In addition to the cases in which I have testified, Dr. Elizabeth Loftus has given expert testimony in over 200 cases in federal and state courts. Dr. Steven Penrod of the University of Wisconsin has given expert testimony in over 100 cases in federal and state courts. The late Dr. Robert Buckhout of Brooklyn College testified before juries in more than 100 state and federal jury trials and suppression hearings even before the end of the 1970s, including the following cases cited in his book *Psychology and Criminal Justice,* published in 1981:

*People v. Chavez,* (rape-robbery), Sup. Ct., Alameda County, Calif., July 15, 1977; *People v. Richardson and Williams,* (armed robbery), Sup. Ct., Alameda County, Calif., Oct. 29, 1971; *People v. Angela Davis,* (murder), Sup. Ct., Santa Clara County, Calif., May 23, 1972; *People v. Pratt,* (murder), Sup. Ct., Los Angeles, Calif., June 27, 1972; *People v. Castle,* (Armed robbery), Sup. Ct., Contra Costa County, Calif., April 1, 1974; *People v. Kincey et al.,* (assault with deadly weapon), April 3, 1974; *People v. Boldon,* (attempted murder), No. 3180-74, Queens County S. Ct., New York, April 8, 1975; *Florida v. Campbell,* (armed robbery), No. 74-2777, Cir. Ct., Palm Beach County, Florida, April 24, 1975; (Wade hearing and trial); *People v. Montgomery, Woods, and Whitehead,* (attempted murder), Bronx County S. Ct., NY; *People v. Duncan,* (murder), No 71-112, County Court, Tompkins County, Ithaca, New York, June 19, 1975; *State v. Chaisson,* (fraud, grand larceny), Douglas County Court, Omaha, NE, June 5, 1975; *People v. Rucker,* (armed robbery), New York County S. Ct., Sept. 19, 1975; *People v. Wilson,* (armed robbery), Queens County Sup. Ct., NY, Oct. 6, 1975; *State v. McGill and*

*Hull,* (murder), Ingham County District Court, Lansing, MI, Oct. 8, 1975; *People v. Moulterie,* (rape), Kings County S. Ct., NY, July 1976; *People v. Stevens,* (rape), Orange County Court, Goshen, NY, March 15, 1976; *U.S. v. Soliah,* (robbery), U.S. District Court, Eastern District of Calif., Sacramento, Ca, April 1976; *U.S. v. Roszoryk,* (extortion), U.S. District Court, Western Michigan, Grand Rapids, MI, June 1, 1976; *U.S. v. Jarvek,* (robbery), U.S. District Ct., Eastern District, Brooklyn, NY, July 19, 1976; and *U.S. v. Richard Coleman Smith,* (armed robbery), Central District of Calif., Case No. 10171-HP-CE, Aug. 30, 1972.

In addition to these cases, both the Arizona Supreme Court, in *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983), and the California Supreme Court, in *People v. McDonald,* 690 P.2d 709 (1984), as well as the United States Court of Appeals for the Third District, in *U.S. v. Downing,* 753 F.2d 1224 (1985), all have reversed convictions of criminal defendants on the ground that trial judges have committed reversible error by not allowing expert psychological testimony on eyewitness identification. Recently, the courts in several other states have approved the use of such expert testimony, for example in *State v. Contreras,* 674 P.2d 1208 (Alaska App. 1983); *Lindberg v. Leatham Bros, Inc.,* 693 P.2d 1234 (Montana, 1985); *State v. Sellars,* 52 N.C. App. 520, 278 S.E. 2d 907 (1981); *State v. Moon,* 45 Wash. App. 692, 726 P. 2d 1263 (1986); *Campbell v. People*, 814 P.2d 1 (Colo. 1991); and *State v. Whaley*, 406 S.E. 2d 369 (S.C. 1991). It is important to note that experts have also testified at the trial court level in other states where no case law is apparent (see listing two paragraphs above), and that a record of that fact is not created simply because the issue was therefore not addressed on appeal.

## 6. **BRIEF OUTLINE OF TESTIMONY.**

I. The generally accepted theory of memory in the field of psychology, and the division of the memory process into three stages: acquisition, retention, and retrieval. Factors present at each stage can affect the accuracy of eyewitnesses.

A. Acquisition stage
   1. Exposure time (longer, more accurate; but also time overestimation)
   2. Detail salience (unusual details grab attention but detract overall)
   3. Stress (high stress conditions cause more mistakes (not fewer, as is commonly assumed) and time overestimation)
   4. Weapons focus (attention time spent focused on weapons; less time to focus on other stimuli)
   5. Cross-racial identification (worse than same-race)
   6. Effects of set and expectancy
   7. Obvious factors (lighting, eyesight, age, etc.)
   8. Police or people with "special training" (no better or worse than lay eyewitnesses

B. Retention stage
   1. Length of interval (longer, less accurate)
   2. Post-event information (photospreads; Identi-Kit; line-ups, descriptions,

composites, hypnosis, mugshots, later views of defendant, etc., may get incorporated into memory of original event; "unconscious transference," especially with multiple procedures)

3. Bias in post-event information (leading questions; one-on-one confrontations; multiple procedures, etc.)

4. Knowledge of the identity of the suspect by the person conducting identification procedure (can be communicated unintentionally; "double-blind" technique should be used)

5. Conformity effects (multiple witnesses and/or communication)

6. Suggestivity/bias (one picture/person standing out or different is more likely to be picked regardless of accuracy; match photos to description rather than to suspect)

7. Sequential vs. simultaneous presentation of photos (sequential technique reduces false alarms/misidentifications)

8. Instructions given to witnesses (specific instructing that perpetrator "may or may not" be in photospread reduces false alarms/misidentifications)

9. Effect of post-identification feedback (should not tell witnesses that they "got it right"; can affect witness memory and later confidence report)

C. Retrieval stage

1. Unconscious transference (is the in-court identification that of the perpetrator, or the person picked from the identification procedure or seen at some other (earlier) time?)

2. Confidence of witness (virtually unrelated to accuracy, contrary to lay view)


Further affiant saith naught.


_____
Dr. Solomon Fulero

Sworn to and subscribed before me this_____day of _____, 199__.

_____
NOTARY PUBLIC