1   you would be a fair and impartial juror.  Thank you.  We
2   now have a jury.

3           I want to thank those of you who were not
4   selected for coming today.  It is impossible to determine
5   at the outset how many prospective jurors must be
6   questioned before a jury can finally be impaneled.  Jury
7   service is one of the most important activities of being a
8   United States citizen.  The Court very much appreciates
9   your willingness to serve.  Even though you might not have
10  been selected to serve on this jury, your participation in
11  the jury selection process has been a very important
12  contribution to the workings of this court.

13          Those of you not selected are excused and may now
14  leave the courtroom.  Thank you all very much.

15          (Unselected members of the jury panel leave the
16  courtroom.)

17          Mr. Snyder, would you please swear in the jury?
18          (Courtroom deputy swears the jury panel.)

19          THE COURT:  Okay.  Now, before any of you faint
20  from starvation, I'm going to tell you I'm going to let you
21  go in about a minute to go eat lunch, and, when you get
22  back, I'm going to give preliminary instructions, and then
23  we'll have opening statements.

24          Steve Snyder, my courtroom deputy, will also be
25  your caretaker, and we want to try to make this as

1    comfortable and enjoyable an experience for you as we

2    possibly can.  He'll tell you a few things in the jury

3    room.

4         I'll give you a little preview of the case when

5    you get back, and then you will hear one of the most

6    enjoyable parts of the case, which is opening statements.

7    And, then if we have time, we will start with witnesses.

8         Let's stand in recess until -- why don't we stand

9    in recess until 3 o'clock?  I think that will give you an

10   hour and 20 minutes, and Steve has got to talk to you for a

11   few minutes, and the restaurants won't be busy at all at

12   this time of day.  So we will reconvene at 3 p.m.

13        (Jury excused from the courtroom.)

14        THE COURT:  Ms. Cross or Mr. Thapar, I understand

15   there is a matter that you wanted to bring to the Court's

16   attention.

17        MS. CROSS:  Yes, Your Honor.  This morning, in

18   preparing for trial, we have all of our witnesses present

19   in the courthouse.  We have excused some of them because of

20   the timing.  And during the time that one of our witnesses

21   was leaving the courthouse, she was threatened by members

22   of the defendants' family, and we wanted to bring that to

23   the attention of the Court.  And this threat was overheard

24   by Bonnie Silva, who is our victim-witness coordinator in

25   the U.S. Attorney's Office.

1          THE COURT:  Who was the witness, Ms. Cross?

2          MS. CROSS:  The witness is Shanell Holston.

3          THE COURT:  Is she still going to testify?

4          MS. CROSS:  Yes.

5          THE COURT:  What do you propose that the Court

6     do?

7          MS. CROSS:  Admonish members of the defendants'

8     family, who I believe are here and will be sitting in the

9     courtroom during the trial.  I don't know if they're going

10    to be called as witnesses or not, but I anticipate them

11    being in the trial, in the hallway and around some of our

12    witnesses.

13         THE COURT:  All right.  Well, we don't have too

14    many spectators in the court right now.  I'm not quite sure

15    who are relatives or not, but let me inform everybody, and

16    I don't know if the defendants have an opportunity to talk

17    to their family or not, but, if there is any hint

18    whatsoever of any kind of intimidation of any witnesses,

19    the Court will not hesitate to impose the most severe

20    sanctions it can.  I will not hesitate to call the FBI

21    immediately and have them investigate the matter.  And, in

22    fact, when the Court goes back to chambers right now,

23    that's what I intend to do is call the FBI and have them

24    come over and investigate this matter immediately.

25         So I want to put everybody on notice.  This is a

1    very severe thing to do, and the Court will not stand for

2    intimidation of any witnesses or jurors or anyone else

3    involved in this case.

4            Anything further to come before the Court at this

5    time?

6            MS. CROSS:  No, Your Honor.

7            THE COURT:  All right.  We will stand in recess

8    until 3 p.m.

9            Oh, I'm sorry.  Let me ask one question.  What

10   are we doing on opening statements?  Mr. Thapar, you're

11   making it for the government?

12           MR. THAPAR:  Yes, Your Honor.

13           THE COURT:  What are we doing for the defense?

14           MR. FELSON:  I have a brief opening.  I don't

15   know if Mr. Walter Pugh wants to add something to it.

16           DEFENDANT W. PUGH:  Yes.  I have a brief opening.

17           THE COURT:  So Mr. Felson will go first.

18           MR. FELSON:  That would be fine.

19           THE COURT:  I don't care.  Just tell me the

20   order.  You're going to go first and then Walter Pugh?

21           DEFENDANT W. PUGH:  Yes.

22           THE COURT:  Thank you, everyone.  We'll stand in

23   recess until 3 p.m.

24           (Recess at 1:43 p.m.)

25                    AFTERNOON SESSION

1            (Jury present.)

2            THE COURT:  First of all, let me welcome you once

3   again to federal district court.  And just as a personal

4   aside, this is the first time we have used my courtroom

5   since it was totally remodeled.  The jury box used to seat

6   six, and it now seats 14.  Unfortunately, we don't have the

7   regular jury chairs in yet.  We are still waiting for

8   those.  So, if anybody has a problem with any of those

9   chairs, let us know, and we will see what we can do to get

10  you something else more comfortable.

11           Ladies and gentlemen of the jury, the following

12  remarks are intended to serve as your introduction to the

13  trial in which you're participating.  These are not

14  intended to act as a substitute for the detailed

15  instructions on the law that I will give you at the end of

16  the case before you retire to deliberate.  Rather, these

17  remarks are a simple explanation of your duties and

18  responsibilities and the basic principles of law that are

19  likely to be involved in the case.

20           Your purpose as jurors is to find and determine

21  the facts.  Under our system of criminal procedure, you are

22  the sole judges of the facts.

23           If at any time I should make any comment

24  regarding the facts, you are at liberty to disregard it.

25  It is especially important that you perform your duties of

1   determining the facts diligently and conscientiously, for
2   ordinarily there is no means of correcting an erroneous
3   determination of the facts by a jury.
4           On the other hand and with equal emphasis, I
5   instruct you that the law as given by the Court constitutes
6   the only law for your guidance.  It is your duty to follow
7   the law as I give it to you, even though you may disagree
8   with the law.
9           Let me talk just a little bit about note taking
10  by you.  If you want to take notes during the course of the
11  trial, you may do so.  There should be -- are we doing
12  envelopes this time or just notepads?
13          Okay.  We have given you notepads with a pen for
14  you to use if you like.  However, I want you to remember
15  that it's difficult to take detailed notes and pay
16  attention to what the witnesses are saying at the same
17  time.  If you do take notes, be sure that your taking of
18  notes does not interfere with your listening to and
19  considering all the evidence.  Also, if you do take notes,
20  please do not discuss them with anyone before you begin
21  your deliberations.
22          Do not take the notes home with you at the end of
23  the day.  Be sure to leave them in the jury room.
24          If you choose not to take notes, remember that it
25  is your own individual responsibility to listen carefully

1   to the evidence.  You cannot give this responsibility to
2   someone who is taking notes.  Those should only be used to
3   refresh the recollection of the juror who took the notes.
4   You should not use your notes in jury deliberations to
5   prove to other jurors that your notes are in fact what a
6   witness actually said.  It is only your impression of what
7   the witness said.  We depend on the judgment of all members
8   of the jury.  You're all responsible for remembering the
9   evidence in this case.  Remember that notes are only aids
10  to memory and should not be given precedence over your own
11  independent recollection of the facts.

12          You must not allow your note taking to distract
13  your attention from the proceedings.

14          You will notice that we do have an official court
15  reporter making a record of the trial.  However, we will
16  not have typewritten transcripts of the record available
17  for your use in reaching your decision in the case.

18          Let me talk with you a little bit about the facts
19  that are to be determined from the evidence.  You are to
20  determine the facts in this case solely from the evidence,
21  which consists of the testimony of witnesses and the
22  exhibits received in evidence.  Questions asked by the
23  lawyers and Mr. Pugh, who is representing himself, are not
24  evidence.  Only the answers given by the witnesses are
25  evidence.  Statements and arguments made by the attorneys

1  and Walter Pugh are not evidence, even when he represents
2  himself.

3       They may, however, the parties and counsel, enter
4  into what are called agreements or stipulations of fact
5  that are not disputed, and in this case they have done
6  that.   And with regard to stipulations, you're to accept
7  the agreed upon facts as evidence.

8       You are to consider only the evidence in the
9  case, but, in your consideration of the evidence, you are
10 not limited to the bald statements of the witnesses.   In
11 other words, you are not limited solely to what you see and
12 hear as the witnesses testify.  You are permitted to draw
13 from the facts which you decide have been proven such
14 reasonable inferences as you feel are justified in light of
15 your experience.

16      You must not consider as evidence anything you
17 may have read or heard about the case outside the
18 courtroom, whether before or during the trial.

19      Let me talk a little bit about direct and
20 circumstantial evidence.  Some of you may have heard the
21 terms "direct evidence" and "circumstantial evidence."
22 Direct evidence is simply the testimony -- I'm sorry.
23 Direct evidence is simply evidence like the testimony of an
24 eye witness which, if you believe it, directly proves a
25 fact.   If a witness came in here and testified that he saw

1   it raining outside, that would be direct evidence that it
2   was raining.

3           Circumstantial evidence is simply a chain of
4   circumstances that indirectly proves a fact.  If someone
5   walked into the courtroom carrying a raincoat covered with
6   drops of water and carrying a wet umbrella, that would be
7   circumstantial evidence from which you could conclude it
8   was raining.

9           It is your job to decide how much weight to give
10  the direct and circumstantial evidence.  The law makes no
11  distinction between the weight you should give to either
12  one, nor does it say one is any better evidence than the
13  other.  You should consider all the evidence, both direct
14  and circumstantial, and give it whatever weight you believe
15  it deserves.

16          Next I want to talk a little bit about
17  credibility of witnesses.  Another part of your jobs as
18  jurors is to decide how credible or believable each witness
19  is.  This is your job, not mine.  It is up to you to decide
20  if a witness' testimony was believable and how much weight
21  you think it deserves.  You are free to believe everything
22  that a witness said or only part of it or none of it at
23  all.  But you should act reasonably and carefully in making
24  these decisions.

25          Let me suggest some things for you to consider in

1    evaluating each witness' testimony.  Ask yourself if the

2    witness was able to clearly see or hear the events.

3    Sometimes even an honest witness may not have been able to

4    clearly see or hear what was happening and may make a

5    mistake.

6            Ask yourself how good the witness' memory seemed

7    to be.  Did the witness seem to be able to accurately

8    remember what happened?

9            Ask yourself if there was anything else that may

10   have interfered with the witness' ability to perceive the

11   events.

12           Ask yourself how the witness acted while

13   testifying.  Did the witness appear to be honest, or did

14   the witness appear to be lying?

15           Ask yourself if the witness had any relationship

16   with the government or either of the defendants or anything

17   to gain or lose from the case that may have influenced the

18   witness' testimony.

19           Ask yourself if the witness had any bias or

20   prejudice that would cause the witness to lie or slant

21   testimony for one side or the other.

22           Ask yourself if the witness testified

23   inconsistently while on the witness stand or if the witness

24   said or did something at any other time that is

25   inconsistent with what the witness said while testifying.

1          If you believe that a witness was inconsistent,

2   ask yourself if this makes the witness' testimony less

3   believable.  Sometimes it may.  Other times it may not.

4          Consider whether the inconsistency was about

5   something important or about some unimportant detail.  Ask

6   yourself if it seemed like an innocent mistake or if it

7   seemed deliberate.

8          And ask yourself how believable the witness'

9   testimony is in light of all the other evidence.  Was the

10  witness' testimony supported or contradicted by other

11  evidence that you found believable.  If you believe that a

12  witness' testimony was contradicted by other evidence,

13  remember that people sometimes forget things and that even

14  two honest people who witnessed the same event may not

15  describe it exactly the same way.

16         Those are only some of the things you may

17  consider in deciding how believable each witness was.  You

18  may also consider other things that you think shed some

19  light on the witness' believability.

20         Use your common sense and your everyday

21  experience in dealing with other people and then decide

22  what testimony you believe and how much weight you think it

23  deserves.

24         Some evidence is admitted for a limited purpose

25  only.  When I instruct you that an item of evidence has

1    been admitted for a limited purpose, you must consider it
2    only for that limited purpose and no other.

3        Let me talk just a little bit about my conduct.
4    No statement, ruling or remark or comment that I may make
5    during the course of the trial is intended to indicate my
6    opinion as to how you should decide the case or influence
7    you in any way in your determination of the facts.

8        At times, I may ask questions of witnesses. If I
9    do so, it's for the purpose of bringing out matters which I
10   feel should be brought out and not in any way to indicate
11   my opinion about the facts or indicate the weight I feel
12   you should give to the testimony of the witness.

13       I may also find it necessary to admonish the
14   lawyers. If I do, you should not show prejudice toward a
15   lawyer or his client because I found it necessary to
16   admonish him or her.

17       During the trial, it may be necessary for me to
18   confer with the lawyers from time to time out of your
19   hearing concerning questions of law or procedure that
20   require consideration by the Court alone. And so you may
21   be excused from the courtroom as a convenience to you and
22   us while we discuss such matters. We will try to limit
23   such interruptions as much as possible, but you should
24   remember at all times the importance of the matter we're
25   here to determine and be patient even though the case may

1    seem to be going a little slowly.

2         The parties may present objections to some of the

3    testimony or other evidence.  It is the duty of a lawyer or

4    a defendant representing himself to object to the evidence

5    that he or she believes may not properly be offered.  And

6    you should not be prejudiced in any way against the lawyer

7    or a defendant who makes objections or the party he or she

8    represents.

9         At times, I may sustain objections or direct that

10   you disregard certain testimony or exhibits.  You must not

11   consider any evidence to which an objection has been

12   sustained or that I have instructed you to disregard.

13        Let me talk a little bit about what's called a

14   pro se defendant.  That's a defendant who represents

15   himself.  Although he has the constitutional right to be

16   represented by counsel, Defendant Walter Pugh has exercised

17   his constitutional right not to be represented by counsel

18   and to represent himself in this proceeding.  His decision

19   to represent himself is not to be considered as a factor

20   for or against him.

21        Next I want to talk about the presumption of

22   innocence, the burden of proof, and what we call reasonable

23   doubt.

24        The defendants have pled not guilty to the crimes

25   charged in the indictment.  The indictment is not any

1   evidence at all of guilt.  It is just the formal way that
2   the government tells the defendants what crimes they are
3   accused of committing.  It does not even raise any
4   suspicion of guilt.

5           Instead, the defendants start the trial with a
6   clean slate with no evidence at all against them, and the
7   law presumes that they are innocent.  This presumption of
8   innocence stays with them unless the government presents
9   evidence here in court that overcomes the presumption and
10  convinces you beyond a reasonable doubt that they are
11  guilty.  This means that the defendants have no obligation
12  to present any evidence at all or to prove to you in any
13  way that they are innocent.  It is up to the government to
14  prove that they are guilty, and this burden stays on the
15  government from start to finish.  You must find the
16  defendants not guilty unless the government convinces you
17  beyond a reasonable doubt that they are guilty.

18          The government must prove every element of the
19  crimes charged beyond a reasonable doubt.  Proof beyond a
20  reasonable doubt does not mean proof beyond all possible
21  doubt.  Possible doubts or doubts based purely on
22  speculation are not reasonable doubts.

23          A reasonable doubt is based upon reason and
24  common sense.  It may arise from the evidence, the lack of
25  evidence or the nature of the evidence.  Proof beyond a

1   reasonable doubt means proof that is so convincing that you
2   would not hesitate to rely and act on it in making the most
3   important decisions in your own lives.  If you are
4   convinced that the government has proved the defendants
5   guilty beyond a reasonable doubt, say so by returning a
6   guilty verdict.  If you are not convinced, say so by
7   returning a not guilty verdict.

8           Let me talk a little bit about the charges in the
9   case.  The defendants Walter M. Pugh, Jr. and Tyreese D.
10  Pugh have been charged in a five-count indictment.  Count
11  one charges both defendants with conspiring to take by
12  force or violence money belonging to a bank whose deposits
13  were then insured by the Federal Deposit Insurance
14  Corporation and in committing such offense were assaulting
15  or putting in jeopardy the life of another person by use of
16  a dangerous weapon.

17          The defendants have pled not guilty to count one.
18  For you to find the defendants guilty of count one, you
19  must be convinced beyond a reasonable doubt that the
20  government has proven every element of the above violation.
21          Count two charges both defendants with taking by
22  force or violence money belonging to a bank whose deposits
23  were then insured by the Federal Deposit Insurance
24  Corporation and in committing such offense were assaulting
25  or putting in jeopardy the life of another person by use of

1    a dangerous weapon.

2         The defendants have pled not guilty to count two.

3    For you to find the defendants guilty of count two, you

4    must be convinced beyond a reasonable doubt that the

5    government has proven every element of the above violation.

6         Count three charges Defendant Walter Pugh with

7    knowingly using, carrying and brandishing a firearm during

8    a crime of violence for which he may be prosecuted in a

9    court of the United States.

10        Defendant Walter Pugh has pled not guilty to

11   count three.  For you to find Defendant Walter Pugh guilty

12   of count three, you must be convinced beyond a reasonable

13   doubt that the government has proven every element of the

14   above violation.

15        Count four charges Defendant Tyreese Pugh with

16   knowingly using, carrying and brandishing a firearm during

17   a crime of violence for which he may be prosecuted in a

18   court of the United States.

19        The Defendant Tyreese Pugh has pled not guilty as

20   to count four.  For you to find him guilty of count four,

21   you must be convinced beyond a reasonable doubt that the

22   government has proven every element of the above violation.

23        And finally, count five charges the Defendant

24   Tyreese Pugh with knowing possession in and affecting

25   commerce of a firearm while he was a convicted felon.

1    Defendant Tyreese Pugh has pled not guilty to

2    count five. For you to find Defendant Tyreese Pugh guilty

3    of count five, you must be convinced beyond a reasonable

4    doubt that the government has proven every element of the

5    above violation.

6    Let me talk now a little bit about what the jury

7    does in terms of conduct. Do not decide any issue or form

8    any opinion in this case until you have heard all the

9    evidence, been instructed by the Court on the law and

10    retired to the jury room to deliberate. Until the case is

11    submitted to you, you are not to discuss this case with

12    anyone, not even your fellow jurors. Likewise, it would be

13    improper for you to allow anyone to discuss the case in

14    your presence. You must not talk to the parties, the

15    lawyers or the witnesses under any circumstances.

16    Since you must keep an open mind until you're

17    instructed by the Court to begin your deliberations, it is

18    important that you do not read newspaper articles or listen

19    to radio or TV broadcasts about the case. And I'm not

20    saying that there will be any, but, just in case, I want to

21    caution you about that.

22    I would suggest that, when you arrive at home,

23    you simply tell your family that you're sitting on a jury

24    in federal court and that you will be glad to talk with

25    them about the case as soon as the jury has a verdict.

1           After the case is submitted to you, you must

2    discuss it only in the jury room with your fellow jurors.

3    Should anyone improperly approach you concerning the case,

4    you should promptly report it to the United States Marshal

5    or to the Court.

6           I do not anticipate that there will be any such

7    approaches, but even inadvertent statements in your

8    presence dealing with the trial should immediately be

9    brought to the Court's attention.  Likewise, should you

10   inadvertently read, see or hear anything in the media

11   concerning the case, you should inform the Court.

12          Now, just a few more words about your conduct as

13   jurors.  You will not be required to remain together while

14   the Court is in recess.  It's highly important that you

15   strictly observe the rules that govern you during a recess

16   or adjournment so as to assure the parties of a fair trial

17   by not allowing any outside information or incidents to

18   influence your consideration of this case.

19          First, do not discuss the case with anyone or

20   permit anyone to discuss it with you.  Until you retire to

21   the jury room at the end of the case to deliberate on your

22   verdict, you are simply not to talk about the case.  If

23   anyone should try to talk to you about it, please bring it

24   to the Court's attention immediately, but do not discuss it

25   with your fellow jurors.

1          Secondly, do not try to do any research or make

2   any investigation of the case on your own.

3          Next, please do not talk, whether in or out of

4   the courtroom, with any of the parties or their attorneys

5   or any witnesses.  By this, I mean not only do not talk

6   about the case, but do not talk at all even to pass the

7   time of day.  In no other way can the parties be assured of

8   the absolute impartiality they're entitled to expect from

9   you as jurors.

10          I assure you that no one will consider you rude

11   for failing to talk to someone involved in the case.

12   Everyone is bound by the same rule.

13          And, finally, do not attempt to form any opinion

14   until after all the evidence has been presented.  In that

15   way, every party's evidence will receive equal

16   consideration from you.

17          When you retire to the jury room for you

18   deliberations after the Court has instructed you on the

19   law, then you will fully and freely discuss the evidence so

20   as to arrive at a verdict.

21          Let me talk with you about the order of

22   proceedings.  The trial is going to proceed in the

23   following order.  First, the parties have the opportunity

24   to make opening statements.  The government will make an

25   opening statement at the beginning of the case.  The

1    defendants may make opening statements following the
2    opening statement for the government, or they can defer the
3    making of opening statements until the close of the
4    government's case.  No party is obliged to make an opening
5    statement, and what is said in opening statements is not
6    evidence.  These statements simply serve the purpose of
7    introducing the evidence which the party making the
8    statement intends to produce.
9            Second, the government will introduce evidence in
10   support of the charges contained in the indictment.
11           Third, after the government has presented its
12   evidence, the defendants will have the option of presenting
13   evidence.  Defendant Tyreese Pugh will have the first
14   opportunity to present evidence.  Defendant Walter Pugh may
15   then present evidence.
16           While both defendants may present evidence,
17   neither one of them is obliged to do so.  The burden is
18   always on the government to prove every element of the
19   offenses charged beyond a reasonable doubt.  The law never
20   imposes on a criminal defendant in a criminal case the
21   burden of calling any witnesses or introducing any
22   evidence.
23           Fourth, at the conclusion of the evidence, all
24   parties have the opportunity to present oral argument in
25   support of their case.  What is said in closing arguments

1    is not evidence, just as what is said in opening statements
2    is not evidence.  The arguments are designed to present to
3    you the contentions of the parties as to what they believe
4    the evidence has shown and what inferences they think you
5    should draw from the evidence.  The government has the
6    right to open and close the arguments.

7         Fifth, I'll instruct you on the applicable law,
8    and you will then retire to consider your verdict.  Your
9    verdict must be unanimous.

10         We will now begin by affording Mr. Thapar an
11   opportunity to make opening statement in which he will
12   explain the issues in the case and summarize the facts that
13   he expects the evidence will show from the government's
14   point of view.  When he finishes, Mr. Felson and Mr. Walter
15   Pugh will have an opportunity to present their opening
16   statements.

17         The opening statements of the parties are not to
18   be considered as evidence in the case or as your
19   instruction on the law, which will come only from me.
20   Nevertheless, these statements and arguments are intended
21   to help you understand the issues and the evidence to be
22   presented in this case, as well as the positions taken by
23   both sides.

24         So now I ask that you give Mr. Thapar your close
25   attention as I recognize him for the purpose of making his

1    opening statement.

2            Mr. Thapar, you may proceed with the government's

3    opening statement.

4            MR. THAPAR:  Thank you, Your Honor.

5            Your Honor, just for the record, I will invoke

6    the rule on witnesses.  I don't know if there are any in

7    the courtroom.

8            THE COURT:  Ladies and gentlemen seated in the

9    spectator area, we have something called the separation of

10   witnesses.  That means anyone who may be a witness in the

11   case may not be present in the courtroom during the

12   testimony of other witnesses.

13           So, if we have anyone in the gallery who is going

14   to be a witness in the case, I would ask that you now leave

15   the courtroom and go and wait in the witness room that's on

16   the other side the foyer.

17           You may proceed, Mr. Thapar.

18           MR. THAPAR:  Thank you, Your Honor.

19           Good afternoon ladies and gentlemen.  My name is

20   Amul Thapar, and I'm the prosecutor in this case along with

21   Wende Cross, who is sitting with me at counsel table.  Also

22   Special Agent Terry Moran, who is an FBI agent, is

23   assisting us in this case.

24           Ladies and gentlemen of the jury, this afternoon

25   I'm going to talk to you for a little bit about what the

1   evidence in this case will show.  The evidence will show on
2   April 24, 2002, in Hamilton, Ohio, two bank tellers and a
3   manager went to work.  They went to work at First National
4   Bank of Southwestern Ohio.  That's a bank that's placed in
5   a residential community.  It's a little unusual.  It
6   doesn't have commercial businesses around it, mainly
7   residences and a school.  And, ladies and gentlemen, you
8   will hear the bank isn't often very busy, and the tellers
9   and the manager know most people that walk into that bank.

10         On April 24th, it was a Wednesday, a normal day
11  for the tellers and manager.  They showed up at work like
12  they always do, ready to begin the day.  And for the first
13  few hours nothing abnormal happened.  People came, and
14  people went.  They deposited checks and did other things.

15         Around 2:22, however, that day changed forever.
16  At 2:22 in the afternoon of Wednesday, April 24, the
17  defendants Walter Pugh and his son Tyreese Pugh walked into
18  that bank.  The tellers were shocked.  Why were they
19  shocked?  The evidence will show that Mr. Walter Pugh came
20  in without a mask but with a handgun.  Behind him came
21  Tyreese Pugh, mask down, shotgun in hand.

22         Tyreese Pugh went over to the manager
23  immediately, took the gun, pulled it up, pointed it at the
24  manager and told him to get down on the ground and not to
25  touch the alarm button, face down.  The manager did as he

1   was told.

2          Walter Pugh went over to the counter where the

3   tellers were.  Before they knew what was going on, Walter

4   Pugh was over the counter.  He vaulted it, grabbed a trash

5   can and told them to put the money in their drawers in the

6   can.  They did as they were told.

7          Walter Pugh then took one of the tellers by gun

8   pointed at her head to the vault.  She was hysterical but

9   did as he told her and put all the money in the vault in

10  the trash can, or everything she could get while she was

11  shaking.

12         They then left with 150 -- about $153,000 of that

13  bank's money.

14         For the next week, ladies and gentlemen, they

15  fled to Georgia.  They were there for about a week, and

16  then they returned.  And they came back to Ohio together,

17  and they hid out in Mt. Healthy at the house of one of

18  their friends, Cortes Renfro.

19         And, ladies and gentlemen, on the night they were

20  arrested, the police arrested Walter Pugh when he left the

21  house in a car.  They then went into the house to arrest

22  Tyreese Pugh and found him with a shotgun.

23         Now, ladies and gentlemen, the judge has talked

24  to you about the five counts the United States has alleged

25  that the two defendants, the crimes that the two defendants

1    committed.  And briefly I want to talk to you about what

2    the evidence will show in relation to those counts, very

3    briefly.

4          At the end of this case, we're going to ask you

5    to convict the defendants on all five counts.  First, we're

6    going to ask you to convict them of robbing the First

7    National Bank of Southwestern Ohio.  Not only are we going

8    to ask you to convict them of robbing the bank, but we're

9    going to ask you to convict them of conspiring together to

10   rob the bank.

11         And the evidence will show through a stipulation

12   that the judge will give you that that bank was federally

13   insured by the FDIC.

14         Next, we are going to ask you to convict both

15   defendants of brandishing firearms during a crime of

16   violence, a federal crime of violence, and that is bank

17   robbery.

18         Finally, we're going to ask you to convict

19   Mr. Tyreese Pugh of being a felon in possession of a

20   firearm that traveled through interstate commerce.  And you

21   will hear through stipulation again that Mr. Tyreese Pugh

22   is a felon who was convicted of a crime whose sentence

23   exceeds one year.  The importance of that is purely

24   statutory.

25         So, ladies and gentlemen, thank you for listening

1   to me this afternoon, and at the end of the case Ms. Cross

2   will get up and ask that you convict the defendants on all

3   five counts.  Thank you.

4            THE COURT:  Thank you, Mr. Thapar.

5            Mr. Felson, are you prepared to make opening

6   statement at this time?

7            MR. FELSON:  Yes.

8            THE COURT:  All right.  We will move the little

9   podium for you.

10           MR. FELSON:  With no objection, he can leave it

11  here.  We're fine with that.

12           THE COURT:  Okay.

13           MR. FELSON:  Good afternoon, ladies and gentlemen

14  of the jury.  I'm again Ed Felson, and I represent Tyreese

15  Pugh.  I'm appointed to represent Tyreese Pugh, but not

16  Walter Pugh.  So that's a very important distinction.

17  Walter Pugh represents himself.  So, when I speak, I'll be

18  speaking for Tyreese only.

19           Again, this is a bank robbery, and we're not

20  disputing that.  We're not disputing there is $150,000 or

21  so stolen.

22           The government says that Tyreese Pugh was

23  involved in this case, and we're saying he wasn't.  He's

24  denied it all along, and that's what the case is about, we

25  have determined.

1          Now, the state, the government says this is what

2    the government will show, that Walter Pugh was in that

3    bank.  But it's really important to note, not only what the

4    evidence will show, but what it won't show.  In other

5    words, we're all aware of our government and our

6    government's abilities, and we know the government has the

7    ability to have labs they have that can test DNA.  They

8    have scientists.  We can put a man on the moon.  We can

9    send a space station out into space.  And what's important

10   about this case is, with all the sophistication the

11   government has, that what the evidence won't show is that

12   there is a hair on this man Tyreese's head that was found

13   anywhere in or around that bank; a print from this man

14   Tyreese Pugh's palm, any of his fingers, thumbs, a print

15   from any -- of his shoes anywhere in this bank.  Simply,

16   there is going to be no evidence presented for that.

17          There is going to be no evidence presented that

18   any of these clothes, this mask that was apparently worn,

19   was tested, has any of Mr. Pugh's hair on it or any

20   evidence that he wore some kind of a mask or that there was

21   a mask found with his DNA or his hair follicles on it.

22   There is going to be a lack of evidence that any of his

23   clothes or fibers or hair follicles or prints or anything

24   else was found on any of any money anywhere or any money

25   allegedly that came from this bank or any of the guns that

1 | they allegedly had that they're allegedly going to show
2 | you.

3 | They -- I think they have two cars that they have
4 | taken into custody and they have searched and they have
5 | search warrants and all this stuff. Well, they're claiming
6 | that Tyreese Pugh went somewhere in Atlanta or somewhere in
7 | one of these cars. Well, with all their sophistication and
8 | with their space stations up there, and we have gone to
9 | Mars and all that, they won't be able to put one hair of
10 | this man's body, one fingerprint, one piece of fiber of his
11 | clothing or anything in any of these cars.

12 | So what you have got is really a lack of
13 | evidence. And that's really what the evidence is going to
14 | show here, that there just simply isn't any evidence to tie
15 | Tyreese to any of these issues that they're saying.

16 | Now, the person wore a mask, so I guess they're
17 | saying some kind of eye witness, I guess through the mask
18 | or something. I don't know how they're going to place him
19 | in there. But the point is our government owes us a duty,
20 | and it's the duty to present evidence. And you can only go
21 | by what evidence you hear from that chair right over there.
22 | And I'm submitting to you that's what the case is about is
23 | a lack of evidence, and they won't have any.

24 | And, as you know, he's innocent as he's sitting
25 | here. We have to prove nothing. The government has to

1   prove each and every element beyond a reasonable doubt.

2   And when you get done hearing the evidence -- this is the

3   last time I get to talk to you before closing -- you will

4   see that there simply isn't any.  Thank you.

5           THE COURT:  Thank you, Mr. Felson.

6           Mr. Walter Pugh, would you like to make opening

7   statement at this time?

8           DEFENDANT W. PUGH:  I thought he was going to put

9   it there.

10          THE COURT:  We'll be glad to move it.  No

11  problem.

12          (Moving the podium to the defense table.)

13          THE COURT:  You may proceed.

14          DEFENDANT W. PUGH:  Ladies and gentlemen of the

15  jury, my name is Walter Pugh, Jr.  I am an American

16  product.  I been living in America all my life.  I did not

17  rob no bank, and the evidence will show that I did not rob

18  no bank.

19          First of all, I'm a little nervous.  This is new

20  to me.  This is something new to me.  I never practiced the

21  law before in my life.  But you don't need to practice the

22  law to know when you are wrongfully being accused.  When

23  you know you're wrongly -- when you know that you are

24  wrongly being accused, you got to stand up for your rights,

25  stand up to the government and let them know you got

1  something to say.

2          I got something to say.  I got questions to ask.

3  Why am I being accused wrongly?  The reason I have

4  something to say, I'm not saying that my court-appointed

5  assistant attorney cannot ask for me, but what I'm saying

6  is I can ask.  I believe I can be a little more effective,

7  because I will be asking the facts.  I will prove with

8  facts that the evidence that the government have against me

9  is no evidence.  They don't have no evidence.

10         On April 24, 2002, at 2:21 p.m. a bank was robbed

11  by three black alleged robbers for 153 dollars -- $153,189.

12  The bank's surveillance camera photographed two of the

13  alleged robbers.  A witness observed and gave the best

14  description they could of that getaway car.  And the

15  evidence that the prosecution have, the government have

16  against me, will show that I did not rob that bank or no

17  bank.

18         They have accused me of $153,189.  Where is that

19  money?  I don't have it.  And the evidence will show.  With

20  that in perspective, I ask what -- I plead not guilty, and

21  I ask for your verdict to come back not guilty.  Thank you.

22             THE COURT:  Thank you, Mr. Pugh.

23         The government may call its first witness.

24             MR. THAPAR:  Your Honor, at this time the United

25  States calls James Connaughton.

1    (Witness sworn by the courtroom deputy.)

2    THE COURT:  You may proceed, Mr. Thapar.

3    MR. THAPAR:  Thank you, Your Honor.

4    How would you like us to exam the witnesses, from

5    counsel table?

6    THE COURT:  Yes.  Do you want -- you can either

7    sit or stand, whatever is more comfortable for you.  I

8    think it may in part depend on the microphone and if you

9    need it or not.

10   MR. THAPAR:  Okay.

11   THE COURT:  You're welcome to do either.

12   MR. THAPAR:  I think I'm somewhat loud.  So it

13   should be all right.  Please let me know if you have a

14   problem hearing.

15                    JAMES CONNAUGHTON

16                    DIRECT EXAMINATION

17   BY MR. THAPAR:

18   Q.   Mr. Connaughton, can you introduce yourself to the

19   jury and spell your last name for the record?

20   A.   My name is Jim Connaughton, Co-n-n-a-u-g-h-t-o-n.

21   Q.   And where do you work?

22   A.   First Financial Company, First Financial Bank now.  It

23   was First National Bank of Southwestern Ohio when it was

24   robbed.

25   Q.   And how long have you worked there?

CONNAUGHTON - DIRECT

1  A.  Thirty-four years at the bank.

2  Q.  And how long -- what branch do you work at?

3  A.  Now or then?

4  Q.  Now, yes.  Where do you work now?

5  A.  The Camden Office.

6  Q.  I want to direct your attention to April 24th of this

7  year if I could.  Where did you work then?

8  A.  The University Office in Hamilton.

9  Q.  Okay.  And that is a branch?

10  A.  Correct.

11  Q.  Now, I want to talk to you specifically about some

12  exhibits in front of you, okay, if I could.  First, I would

13  like you to look at Government's Exhibit 1.1.  Can you tell

14  me what that is?

15  A.  That's a photograph of the branch that I worked at.

16         THE COURT:  What was the number there?

17         MR. THAPAR:  I'm sorry.  1.1.

18         THE COURT:  Thank you.

19  BY MR. THAPAR:

20  Q.  And how do you know that's a photograph of the bank?

21  A.  Well, I worked there for five years.

22  Q.  Okay.  And is that a true and accurate -- when I say

23  true and accurate, is it altered in any way, or does that

24  look exactly like the bank?

25  A.  That's exactly like the bank.

CONNAUGHTON - DIRECT

1       MR. THAPAR:  Your Honor, at this time the

2    government would introduce into evidence Government's

3    Exhibit 1.1.

4       THE COURT:  Any objection?

5       MR. FELSON:  No.

6       DEFENDANT W. PUGH:  No, ma'am.

7       THE COURT:  Government exhibit 1.1 will be

8    admitted and may be displayed to the jury whenever you

9    wish.

10      MR. THAPAR:  Thank you.

11   BY MR. THAPAR:

12   Q.   I want to -- can you, just from pointing up there, or

13   tell us where the entrance to the bank is there?

14   A.   To the right of that tree.

15   Q.   Okay.  And I'm going to go through those now kind of

16   fast, if it's okay, and just slow me down if you have any

17   questions.  But I want to talk about Government Exhibit

18   1.2.  Can you tell me what that is?

19   A.   That's the front of the bank where I worked.

20   Q.   Okay.  And how do you know that?

21   A.   Like I said, I have worked there for five years.

22      MR. THAPAR:  Okay.  At this time, we move into

23   evidence 1.2.

24      THE COURT:  Any objection to Government Exhibit

25   1.2 being admitted?

1           MR. FELSON:  Not from Tyreese Pugh.

2           DEFENDANT W. PUGH:  Not from Walter Pugh.

3           THE COURT:  All right.  Government Exhibit 1.2

4    will be admitted and may be displayed to the jury.

5           I think we're going to make a switch here,

6    Mr. Thapar.  We're going to give the witness an additional

7    exhibit book, and we will bring back the colored ones to

8    use on the visualizer for you.

9    BY MR. THAPAR:

10   Q.   And is this just the other half of the front of the

11   bank?

12   A.   Right.

13   Q.   I want to direct your attention to Government Exhibit

14   1.3.  What is it?

15   A.   Again, it's a picture of the bank from a different

16   angle looking right at the front door.

17   Q.   Is it a true and accurate depiction of the bank?

18   A.   Yes, it is.

19           MR. THAPAR:  At this time, the government would

20   offer Government Exhibit 1.3 into evidence.

21           MR. FELSON:  No objection.

22           THE COURT:  Mr. Walter Pugh, any objection to

23   Government Exhibit 1.3?

24           DEFENDANT W. PUGH:  No, ma'am.

25           THE COURT:  Okay.  Government Exhibit 1.3 is

1    admitted and may be displayed to the jury.

2    BY MR. THAPAR:

3    Q.    Is that the door entrance to the bank?

4    A.    Right.

5    Q.    I'll now have you look at Government's Exhibit 1.4.

6    What is it?

7    A.    It's an inside picture.  It's the lobby looking

8    towards the teller line.

9    Q.    Is it a true and accurate depiction of the teller

10   line?

11   A.    Yes, it is.

12              MR. THAPAR:  At this time, the government would

13   ask Government Exhibit 1.4 be admitted into evidence.

14              MR. FELSON:  No objection.

15              DEFENDANT W. PUGH:  No objection.

16              THE COURT:  All right.  Government Exhibit 1.4

17   will be admitted and may be displayed to the jury.

18   BY MR. THAPAR:

19   Q.    Okay.  And that is again what, Mr. Connaughton?

20   A.    That's the lobby, and it's looking towards the teller

21   line.  The tellers are behind the counter there.

22   Q.    I'm going to have you look at once at government's

23   Exhibits 1.5, 1.6, 1.7 and 1.8 if that's all right.  And

24   can you tell the jury what each of those are?

25   A.    1.5 is the other end of the teller line and in the

1    background is a drive-up window.  Again, that's taken from

2    the lobby.  1.6 is a picture of the vault, and to the left

3    of that is my office.  1.7 again is a close-up of the

4    vault.  1.8 is the inside of the vault, and there is a door

5    there that separates the first part of the vault to the

6    second part where the money is kept.

7    Q.   And are all these true and accurate depictions of what

8    you told us?

9    A.   They are true and accurate depictions, right.

10              MR. THAPAR:  At this time, the government would

11    offer Exhibits 1.5, 1.6 and 1.7 and 1.8.

12              MR. FELSON:  No objection.

13              DEFENDANT W. PUGH:  No objection.

14              THE COURT:  All right.  Government Exhibits 1.5,

15    1.6, 1.7 and 1.8 will be admitted and may be displayed to

16    the jury.

17    BY MR. THAPAR:

18    Q.   I want to show you Government Exhibit 2.  Can you tell

19    me what that is?

20    A.   That's a diagram of the branch itself with all the

21    rooms broken down.

22    Q.   And is that a true and accurate depiction of the

23    branch?

24    A.   It is.

25              MR. THAPAR:  At this time, the government would

1     offer Government Exhibit 2.

2              THE COURT:  Any objection?

3              MR. FELSON:  No.

4              DEFENDANT W. PUGH:  No, ma'am.

5              THE COURT:  Government Exhibit 2 will be admitted

6     and may be displayed to the jury.

7              MR. THAPAR:  Thank you, Your Honor.

8     BY MR. THAPAR:

9     Q.   Mr. Connaughton, I want to talk to you now about April

10    24, 2002, and I want to direct your attention to about 2:20

11    in the afternoon.  Were you working on that day at that

12    time?

13    A.   Yes, I was.

14    Q.   What was your position?

15    A.   I am the branch officer manager.

16    Q.   Did anything unusual happen on that day around that

17    time?

18    A.   Yes.

19    Q.   Can you tell the ladies and gentlemen of the jury what

20    happened?

21    A.   Well, I'm sitting in my office doing some paperwork,

22    and all of a sudden hear this loud -- people yelling.

23    Those two men came through the front door yelling.  One of

24    them jumped up on top of the counter, and he had a gun.

25    And the other one was walking real fast towards me.  And I

1   had my hand on the button ready to sound the alarm, and he
2   told me to get my hand off the alarm, which I did.  Then he
3   instructed me to lay flat down looking at the ground with
4   my hands straight out.  So I did that.  He told me not to
5   move.  He stood there, as far as I know -- I couldn't
6   see -- but he stood there, because every now and then he
7   would tell me don't move.
8        The other gentleman -- the tellers were kind of
9   screaming.  They were kind hysterical.  And I could hear
10  one of the tellers crying and screaming.  I could tell that
11  she was inside the vault.  So the other gentleman or guy
12  took her into the vault.  There was still a lot of crying
13  going on.  She was nervous.  She had trouble doing what he
14  said.  A couple times the guy that was on me says "Hurry
15  up.  The mailman's coming."  I believe he said that two
16  different times.  At one time, I felt the gun resting on my
17  shoulder.
18       When they were finished, he told all of us to don't
19  move for 20 seconds.  When I heard them go out the door --
20  Q.  I'm going to stop you there.  I'm sorry.  I want to go
21  back and cover a few things, and then we'll talk about what
22  happened after they left, if that's okay.
23       The gentleman that came over to you, can you describe
24  him for us to the best of your ability?
25  A.  I could tell that he was black.  He had a shotgun