either one and does not say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Credibility of witnesses. Another part of your job as jurors is to decide how credible or believable each witness was. This is your job, not mine. It is up to you to decide if a witness' testimony was believable and how much weight you think it deserves. You are free to believe everything that a witness said or only part of it or none of it at all. But you should act reasonably and carefully in making these decisions.

Let me suggest some things for you to consider in evaluating each witness' testimony.

Ask yourself if the witness was able to clearly see or hear the events. Sometimes, even an honest witness may not have been able to clearly see or hear what was happening and may make a mistake.

Ask yourself how good the witness' memory seemed to be. Did the witness seem able to accurately remember what happened?

Ask yourself if there was anything else that may have interfered with the witness' ability to perceive or remember the events.

Ask yourself how the witness acted while

testifying. Did the witness appear honest, or did the witness appear to be lying?

Ask yourself if the witness had any relationship to the government or either of the defendants or anything to gain or lose from the case that might influence the witness' testimony.

Ask yourself if the witness had any bias, prejudice or reason for testifying that might cause the witness to lie or to slant testimony in favor of one side or the other.

Ask yourself if the witness testified inconsistently while on the witness stand or if the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while testifying. If you believe that the witness was inconsistent, ask yourself if this makes the witness' testimony less believable. Sometimes it may. Other times, it may not. Consider whether the inconsistency was about something important or about some unimportant detail. Ask yourself if it seemed like an innocent mistake or if it seemed deliberate.

And ask yourself how believable the witness' testimony is in light of all the other evidence. Was the witness' testimony supported or contradicted by other evidence that you found believable? If you believe that a

witness' testimony was contradicted by other evidence, remember that people sometimes forget things and that even two honest people who witnessed the same event may not describe it exactly the same way.

These are only some of the things you may consider in deciding how believable each witness was. You may also consider other things that you think shed some light on the witness' believability. Use your common sense and your everyday experience in dealing with other people and then decide what testimony you believe and how much weight you think it deserves.

Number of witnesses. One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were and how much weight you think their testimony deserves. Concentrate on that, not the number of witnesses.

Separate consideration, multiple defendants charged with different crimes. The defendants have been charged with different crimes. I will explain to you in more detail shortly which defendant has been charged with which crimes, but, before I do that, I want to emphasize several things.

The number of charges is no evidence of guilt, and this should not influence your decision in any way. And in our system of justice, guilt or innocence is personal and individual. It is your duty to consider separately the evidence against each defendant on each charge and to return a separate verdict for each of them. For each one, you must decide whether the government has presented proof beyond a reasonable doubt that a particular defendant is guilty of a particular charge.

Your decision on any one defendant or one charge, whether it is guilty or not guilty, should not influence your decision on the other defendant or charges.

That concludes the part of my instructions explaining your duties and the general rules that apply in every criminal case. In a moment, I will explain the elements of the crime that the defendants are accused of committing. But before I do that, I want to emphasize that the defendants are on trial only for the particular crimes charged in the indictment. Your job is limited to deciding whether the government has proven the crimes charged.

The indictment instruction. The defendants, Walter M. Pugh, Jr. and Tyreese D. Pugh, are charged in this case on five counts.

An indictment is a document by which the government informs a defendant of the charges that the

government intends to prove in a given criminal case. It is not evidence. The information contained in the indictment should not be considered by you in determining the guilt or innocence of the defendants in this case. You should base your verdict solely on the evidence that you heard during this trial.

The indictment in this case states the following: Count one. Beginning on or about an exact date unknown and continuing thereafter until and through on or about April 24, 2002, in Butler County in the Southern District of Ohio, and elsewhere, the defendants Walter Meade Pugh, Jr. and Tyreese Dorran Pugh did willfully and knowingly combine, conspire, and agree together and with each other to commit an offense against the United States; that is, by force, violence and intimidation, take from the person and presence of another money belonging to and in the care, custody, control, management and possession of the First National Bank of Southwestern Ohio, 2299 Peck Boulevard, Hamilton, Ohio, hereinafter referred to as First National Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and, in committing such offense, did assault and put in jeopardy the life of another person by the use of a dangerous weapon, to wit, a firearm, in violation of Title 18, United States Code Sections 2213 (a) and (d).

It was the purpose and object of the conspiracy that the defendants, Walter Meade Pugh, Jr. and Tyreese Dorran Pugh, did plan and did travel to the First National Bank, enter and rob it, brandishing firearms and carrying a bag in which to carry money from the bank.

Overt acts. In furtherance of the conspiracy and to effect the objects thereof, there was committed by at least one of the co-conspirators in the Southern District of Ohio and elsewhere at least one of the following overt acts, among others.

One. On or about April 24, 2002, Walter Meade Pugh, Jr., having borrowed a 1988 maroon Oldsmobile Cutlass Ciera from a relative, met Tyreese Dorran Pugh in order to drive to and rob the First National Bank.

Two. On April 24, 2002, Walter Meade Pugh, Jr. and Tyreese Dorran Pugh drove to the First National Bank for the purpose of robbing the bank.

Three. On April 24, 2002, at approximately 2:30 p.m., Walter Meade Pugh, Jr. and Tyreese Dorran Pugh entered the First National Bank and announced the robbery. At that time -- and I'm just going to shorten their names a little bit -- Tyreese Pugh, who was wearing a mask which partially covered his face, was holding a shotgun. Walter Pugh, Jr. was holding a long-barreled revolver.

Four. On April 24, 2002, upon entering the First

National Bank, Walter Pugh, Jr. immediately jumped the teller counter, picked up a trash can, and ordered a victim teller to remove money from the drawers and place it in the trash can.

Five. On April 24, 2002, after obtaining money from the cash drawers, Walter Pugh, Jr. grabbed a victim teller by her left arm and forceably led her to the bank vault, pointing the long-barreled revolver at her body. Once inside the vault, Walter Pugh, Jr. told the teller to place the money in the trash can until she was told to stop. Thereafter, he left the victim teller inside the vault and shut the inner door.

Six. On April 24, 2002, Walter Pugh, Jr. and Tyreese Pugh, while in the First National Bank, took approximately $153,189 cash from several cash drawers and the vault and placed money into a trash can.

Seven. On April 24, 2002, Walter Pugh, Jr. and Tyreese Pugh fled the First National Bank with the trash can of money and entered a 1988 maroon Oldsmobile Cutlass Ciera.

Eight. On April 24, 2002, following the bank robbery, Walter Pugh, Jr. and Tyreese Pugh fled with the money stolen from the bank to Atlanta, Georgia, to avoid apprehension.

All in violation of Title 18, United States Code

Section 371.

Count two. On or about April 24, 2002, in Butler County in the Southern District of Ohio, the defendants, Walter Pugh, Jr. and Tyreese Pugh, aiding and abetting each other, did by force, violence and intimidation take from the person and presence of another approximately $153,189 in money belonging to and in the care, custody, control and management and possession of the First National Bank of Southwestern Ohio, 2299 Peck Boulevard, Hamilton, Ohio, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and, in committing such offense, did assault and put in jeopardy the life of another person by the use of a dangerous weapon, to wit: A firearm. In violation of Title 18, United States Code Section 2113(a), (2) and 2.

Count three. On or about April 24, 2002, in Butler County in the Southern District of Ohio, the defendant Walter Pugh, Jr. did knowingly use, carry and brandish a firearm, to wit: A long-barreled revolver, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is armed robbery of the First National Bank of Southwestern Ohio, 2299 Peck Boulevard, Hamilton, Ohio. In violation of Title 18, United States Code Section 924(c)(1)(A)(ii).

Count four. On or about April 24, 2002, in

Butler County in the Southern District of Ohio, the defendant Tyreese Pugh did knowingly use, carry and brandish a firearm, to wit: A shotgun, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, armed robbery of the First National Bank of Southwestern Ohio, 2299 Peck Boulevard, Hamilton, Ohio. In violation of Title 18, United States Code Section 924(c)(1)(A)(ii).

Count five: On or about May 3rd, 2002, in Hamilton County in the Southern District of Ohio, the defendant Tyreese Dorran Pugh, having been convicted of a crime punishable by imprisonment for a term exceeding one year as defined by Title 18, United States Code Section 921(a)(20), that is drug trafficking in case number CR99-030312, in the Butler County Court of Common Pleas, Hamilton, Ohio, did knowingly possess in and affecting commerce a firearm, to wit: A Mossberg 12-gauge shotgun, serial number L792549. All in violation of Title 18, United States Code Sections 922(g)(1) and 924(a)(2).

Conspiracy to commit an offense - basic elements. Count one of the indictment accuses the defendants of a conspiracy to commit the crime of armed bank robbery in violation of federal law. The crime of armed bank robbery will be explained later in the instructions. However, it is also a crime for two or more

persons to conspire or agree to commit a criminal act even if they never actually achieve their goal.

A conspiracy is a kind of criminal partnership. For you to find either of the defendants guilty of the conspiracy charge, the government must prove each and every one of the following elements beyond a reasonable doubt.

A. First, that two or more persons conspired, or agreed, to commit the crime of armed bank robbery.

B. Second, that the defendant in question knowingly and voluntarily joined the conspiracy.

C. And third, that a member of the conspiracy did at least one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

You must be convinced that the government has proved all of these elements beyond a reasonable doubt in order to find either of the defendants guilty of the conspiracy charge.

Agreement. With regard to the first element, a criminal agreement, the government must prove that two or more persons conspired or agreed to cooperate with each other to commit the crime of bank robbery.

This does not require proof of any formal agreement, written or spoken, nor does this require proof that everyone involved agreed on all the details. But proof that people simply met together from time to time and

talked about common interests or engaged in similar conduct is not enough to establish a criminal agreement. These are things that you may consider in deciding whether the government has proved an agreement, but, without more, they are not enough.

What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to commit the crime of bank robbery. This is essential.

An agreement can be proved indirectly by facts and circumstances which lead to a conclusion that an agreement exists, but it is up to the government to convince you that such facts and circumstances existed in this particular case.

Defendant's connection to the conspiracy. If you are convinced that there was a criminal agreement, then you must decide whether the government has proved that the defendants knowingly and voluntarily joined that agreement. You must consider each defendant separately in this regard. To convict either defendant, the government must prove that he knew the conspiracy's main purpose and that he voluntarily joined it intending to help advance or achieve its goals.

This does not require proof that the defendant knew everything about the conspiracy or everyone else

involved or that he was a member of it from the very beginning. Nor does it require proof that the defendant played a major role in the conspiracy or that his connection to it was substantial. A slight role or connection may be enough.

But proof that the defendant simply knew about a conspiracy or was present at times or associated with members of a group is not enough, even if he approved of what was happening or did not object to it. Similarly, just because the defendant may have done something that happened to help the conspiracy does not necessarily make him a conspirator. These are all things that you may consider in deciding whether the government has proved that the defendant in question joined a conspiracy. But without more, they are not enough.

What the government must prove is that the defendant knew of the conspiracy's main purpose and that he voluntarily joined intending to help achieve or advance its goals. This is essential.

The defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he knew the conspiracy's main purpose, but it is up to the government to convince you that such facts and circumstances existed in this particular case.

Overt acts. The third element that the

government must prove is that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

The indictment lists eight overt acts. The government does not have to prove that all these acts were committed or that any of these acts were themselves illegal. But the government must prove that at least one of these acts was committed by a member of the conspiracy and that it was committed for the purpose of advancing or helping the conspiracy. This is essential.

The nature of the offense charged in count two. Count two of the indictment charges that on or about April 24, 2002, in the Southern District of Ohio, Defendants Walter Pugh and Tyreese Pugh, by force, violence, and intimidation took from the person or presence of another certain monies then in the custody or possession of the First National Bank of Southwestern Ohio, which was then insured by the Federal Deposit Insurance Corporation, and that in committing this offense Defendants Walter Pugh and Tyreese Pugh assaulted or put the life of another person in jeopardy by the use of a dangerous weapon or device.

The statute defining the offense charged. 18 United States Code Annotated Section 2113(a) and (d) provides in part that, quote, "Whoever, by force and violence or by intimidation takes or attempts to take from

the person or presence of another any property or money or any other thing of value belonging to or in the care, custody, control, management, or possession of any bank, credit union or any savings and loan association; and whoever, in committing, or attempting to commit, any offense defined in subsection (a) of this section assaults any person or puts in jeopardy the life of any person by the use of a dangerous weapon or device," unquote, shall be guilty of an offense against the United States.

The essential elements of the offense charged. In order to sustain its burden of proof against each of the defendants for the crime of armed bank robbery as charged in count two of the indictment, the government must prove the following four essential elements beyond a reasonable doubt:

One. The defendant in question took money from the person or presence of another while that money was in the care, custody, or possession of the First National Bank of Southwestern Ohio.

Two. The taking was by force and violence or by intimidation.

Three. The defendant in question deliberately assaulted any person or put the life of any person in jeopardy by the use of a dangerous weapon or device while taking the money.

And four. That the deposits of the First National Bank of Southwestern Ohio were then insured by the Federal Deposit Insurance Corporation.

I hereby instruct you that the parties have stipulated that on April 24, 2002, the deposits of the First National Bank of Southwestern Ohio in Hamilton, Ohio, were insured by the Federal Deposit Insurance Corporation.

"Assaults any person" defined. The phrase "assaults any person" means a deliberate attempt to inflict bodily harm or injury upon the person of another. The phrase "assaults any person" also means a threat to inflict bodily harm or injury upon the person of another when that attempt or that threat is coupled with an apparent present ability to do so.

An assault may be committed without actually touching, striking, or doing bodily harm to another. Any intentional display of such force that would give a person reason to fear or expect immediate bodily harm may constitute an assault.

An individual, therefore, who has the apparent present ability to inflict bodily harm on another and voluntarily attempts to inflict bodily harm on that person may be found to have assaulted that person. Similarly, an individual who threatens to inflict bodily harm on another may also be found to have assaulted that person.

"Put in jeopardy the life of any person by the use of a dangerous weapon or device" defined. The phrase "put in jeopardy the life of any person" means knowingly to do an act which exposes a person to a risk of death.

The term "dangerous weapon or device" means any object that can be used by one person to inflict severe bodily harm or injury upon another person.

"Puts in jeopardy the life of any person by the use of a dangerous weapon or device" means, therefore, to expose a person to a risk of death or severe bodily harm by the use of a weapon or device that is capable of inflicting death or severe bodily harm.

"By force and violence or by intimidation" defined. The phrase "by force or violence or by intimidation" means by either: One, the use of actual physical strength or actual physical violence; or, two, doing some act or making some statement to put someone in fear of bodily harm.

The intimidation must be caused by an act knowingly and deliberately done or statement knowingly and deliberately made by the defendant in question which was done or made in such a manner or under such circumstances that would produce such a reaction or such fear of bodily harm in a reasonable person. The government must not prove actual fear on the part of any person.

The government must prove beyond a reasonable doubt, however, that the defendant in question knowingly and deliberately did something or knowingly and deliberately said something that would cause a reasonable person under those circumstances to be fearful of bodily harm.

"Care, custody, control, management or possession" defined. The phrase "care, custody, control, management, or possession" refers to money or funds that are physically within the bank or within its power to control. When a bank holds the money that has been deposited by its customers, for example, the bank may be said to have care, custody, control, management or possession of those funds.

Aiding and abetting. For you to find either defendant guilty of armed robbery, it is not necessary for you to find that he personally committed the crime himself. You may also find him guilty if he intentionally helped or encouraged someone else to commit the crime. A person who does this is called an aider and abettor. But for you to find either defendant guilty of armed bank robbery as an aider and abettor, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that the crime of armed bank robbery was

committed. Second, that the defendant in question helped to commit the crime. And, third, that the defendant in question intend to help commit the crime.

Proof that the defendant may have known about the crime, even if he was there when it was committed, is not enough for you to find him guilty. You can consider this in deciding whether the government has proved that he was an aider and abettor, but without more it is not enough.

What the government must prove is that the defendant did something to help the crime with the intent that the crime be committed.

If you can -- that doesn't read right. If you are -- I think it should be: If you are convinced that the government has proven these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any of these elements, then you cannot find the defendant in question guilty of armed robbery as an aider and abettor.

The nature of the offense charged in counts three and four. Count three of the indictment charges that on or about April 24, 2002, within the Southern District of Ohio, Defendant Walter Pugh used or carried a firearm, namely a long-barreled revolver, during and in relation to the commission of a crime of violence, namely armed bank robbery.

Count four of the indictment charges that on or about April 24, 2002, within the Southern District of Ohio, Defendant Tyreese Pugh used or carried a firearm, namely a shotgun, during and in relation to the commission of a crime of violence, namely armed bank robbery.

The statute defining the offense charged. Section 924(c) of Title 18 of the United States Code provides in pertinent part: Whoever, during and in relation to any crime of violence, uses or carries a firearm shall be guilty of an offense against the United States.

The essential elements of the offense charged. In order to sustain its burden of proof for the crime of using or carrying a firearm during and in relation to a crime of violence as charged in counts three and four of the indictment, the government must prove the following two essential elements beyond a reasonable doubt: One, the defendant in question committed the crime of armed bank robbery as charged in count two of the indictment; and, two, that during and in relation to the commission of that crime, the defendant in question knowingly used or carried a firearm.

"Uses or carries a firearm" defined. The phrase "uses or carries a firearm" means having a firearm or firearms available to assist or aid in the commission of

the crime alleged in count two of the indictment.

In determining whether either Defendant Walter Pugh or Defendant Tyreese Pugh used or carried a firearm, you may consider all the factors received in evidence in the case, including the nature of the underlying crime of violence or drug trafficking alleged, the proximity of the particular defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

The government is not required to show that the defendant in question actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time that a crime of violence occurred. I'm sorry -- at the time that a crime of violence was committed.

"Knowingly" defined. The term "knowingly," as used in these instructions to describe the alleged state of mind of either defendant, means that the defendant in question was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake or accident.

Nature of the offense charged in count five. Count five of the indictment charges that on or about May 3rd, 2002, in the Southern District of Ohio, Defendant

Tyreese Pugh, a convicted felon, knowingly possessed a firearm which affected commerce.

Statute defining the offense charged in count five. Section 922(g)(1) of Title 18 of the United States Code provides in part that: It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to knowingly possess in or affecting commerce any firearm.

Essential elements of the offense charged in count five. In order to sustain its burden of proof for the crime of possessing a firearm as charged in count five of the indictment, the government must prove the following four essential elements beyond a reasonable doubt: One, defendant Tyreese Pugh has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. Two, after this conviction, Defendant Tyreese Pugh knowingly possessed the firearm described in the indictment. Three, such possession was in or affecting interstate or foreign commerce. And, four, the act occurred on or about the date charged in the indictment, May 3rd, 2002, and in the Southern District of Ohio.

"Crime punishable by imprisonment of a term exceeding one year" defined. The phrase "crime punishable by imprisonment for a term exceeding one year" generally means a crime which is a felony. The phrase does not

include any state offense classified by the laws of that state as a misdemeanor and punishable by a term of imprisonment of two years or less and certain crimes concerning the regulation of business practices.

I hereby instruct you that the government and Defendant Tyreese Pugh have stipulated that on May 3, 2002, Defendant Tyreese Pugh was a person who had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year.

"Firearm" defined. The term "firearm" means, A, any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; B, the frame or receiver of any such weapon; C, any firearm muffler or firearm silencer; or, D, any destructive device. The term "firearm" does not include an antique firearm.

Possession. Next I want to explain something about possession. The government does not necessarily have to prove that Defendant Tyreese Pugh physically possessed the firearm described in the indictment for you to find him guilty of this crime. The law recognizes two kinds of possession, actual possession and constructive possession. Either one of these, if proved beyond a reasonable doubt by the government, is enough to convict.

To establish actual possession, the government

must prove that Defendant Tyreese Pugh had direct physical control over the firearm described in the indictment and knew that he had control of it.

To establish constructive possession, the government must proved that Defendant Tyreese Pugh had the right to exercise physical control over the firearm described in the indictment and knew that he had this right and that he intended to exercise physical control over the firearm at some time either directly or through other persons.

For example, if you left something with a friend intending to come back later and pick it up or intending to send someone else to pick it up for you, you would have constructive possession of it while it was in the actual possession of your friend.

But understand that just being present where something is located does not equal possession. The government must prove that Defendant Tyreese Pugh had actual or constructive possession of the firearm and knew that he did for you to find him guilty of this crime. This, of course, is all for you to decide.

"In or affecting commerce" defined. The phrase "in or affecting commerce" includes commerce between any place in the state and any place outside of that state.

The government may meet its burden of proof on

the question of being in or affecting commerce by proving to you beyond a reasonable doubt that the firearm identified in the indictment had traveled at any time across a state boundary line.

The defense theory. That concludes the part of my instructions explaining the elements of the crime. Next, I will explain the defendants' positions. The defense says that the defendants were not present at the bank at the time of the robbery and the robbery was committed by other individuals.

Presence of the defendants at the scene of the crime. One of the questions in this case is whether the defendants were present at the bank at the time of the robbery. In order to find Tyreese Pugh guilty, the government must prove that he was present at the time and place in question. Unless the government proves beyond a reasonable doubt that Defendant Tyreese Pugh was present at the bank at the time of the robbery, you must find him not guilty.

In order to find Defendant Walter Pugh guilty, the government must prove that he was present at the time and place in question. Unless the government proves beyond a reasonable doubt that Defendant Walter Pugh was present at the bank at the time of the robbery, you must find him not guilty.

Introduction to special rules for considering testimony and evidence. That concludes the part of my instructions explaining the defendants' position. Next I will explain some rules that you must use in considering some of the testimony and evidence.

Defendants did not testify. Defendants have an absolute right not to testify. The fact that Defendants did not testify cannot be considered by you in any way. Do not even discuss it in your deliberations. Remember that it is up to the government to prove Defendants guilty beyond a reasonable doubt. It is not up to the defendants to prove that they are innocent.

Impeachment of a witness other than defendant. You have heard the testimony of Ra-Shay Patterson and Shanell Holston. You have also heard that Ms. Patterson knows of an outstanding warrant for her arrest and that before this trial she was convicted of a crime. Further, you have heard that, before this trial, Ms. Holston was convicted of a crime.

This evidence was brought to your attention only as one way of helping you decide how believable their testimony was. Do not use it for any other purpose. It is not evidence of anything else.

Expert testimony. You have heard the testimony of Gwen Gregory, an expert witness. An expert witness has

special knowledge or experience that allows the witness to give an opinion.

You do not have to accept an expert's opinion. In deciding how much weight to give it, you should consider the witness' qualifications and how she reached her conclusions. Remember that you alone decide how much of a witness' testimony to believe and how much weight it deserves. Ordinarily, there is no way that the defendant's state of mind can be proven directly, because no one can read another person's mind and tell what that person is thinking.

But the defendant's state of mind can be proven indirectly from the surrounding circumstances. This includes things like what the defendant said, what the defendant did, how the defendant acted, and any other facts or circumstances in evidence that show what was in the defendant's mind.

You may also consider the nature and probable results of any act that the defendant knowingly did and whether it is reasonable to conclude that the defendant intended those results. This, of course, is all for you to decide.

Judicial notice. I have decided to accept as proved the fact that Butler County is in the Southern District of Ohio, even though no evidence was presented on

this point. You may accept this fact as true, but you are not required to do so.

Jury deliberations. Let me finish by explaining some things about your deliberations in the jury room and your possible verdicts.

The first thing that you should do in the jury room is choose someone to be your foreperson. This person will help to guide your discussions and will speak for you here in court.

Once you start deliberating, do not talk to Mr. Snyder or to me or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to Mr. Snyder. Mr. Snyder will then give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson.

Experiments, research and investigation. Remember that you must make your decision based only on the evidence that you saw and heard here in court. Do not try to gather any information about the case on your own while you are deliberating.

For example, do not conduct any experiment inside

or outside the jury room. Do not bring any books, like a dictionary, or anything else with you to help your deliberations. Do not conduct any independent research, reading or investigation about the case, and do not visit any of the places that were mentioned during the trial. Make your decision based only on the evidence that you have heard here in court.

Unanimous verdict. Your verdict, whether it is guilty or not guilty, must be unanimous. To find either defendant guilty of any charge, every one of you must agree that the government has overcome the presumption of innocence with evidence that proves that defendant's guilt beyond a reasonable doubt.

To find either defendant not guilty of any charge, every one of you must agree that the government has failed to convince you of his guilt beyond a reasonable doubt. Either way, guilty or not guilty, your verdict must be unanimous.

Duty to deliberate. Once the closing arguments of the government and the defendants have been completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep

an open mind as you listen to what your fellow jurors have to say. Try your best to work out the differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently or just to get the case over with. In the end, your vote must be exactly that, your own vote. It is important for you to reach a unanimous agreement, but only if you can do so honestly and in good conscience.

You were permitted to take notes during the trial, and you will be able to take these notes with you into your deliberations. Remember that notes should only be used to refresh the recollection of the juror who took the notes. You should not use your notes in jury deliberation to prove to other jurors that your notes are in fact what a witness actually said. It is only your impression of what the witness said. We depend on the judgment of all members of the jury and you're all responsible for remembering the evidence in the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what everyone else has to say

and then decide for yourself if the government has proven the defendant guilty beyond a reasonable doubt.

Punishment. If you decide that the government has proven either defendant guilty, then it will be my job to decide what the appropriate punishment should be. Deciding what the punishment should be is my job, not yours. It would violate your oath as jurors even to consider the possible punishment in deciding your verdict. Your job is to look at the evidence and decide if the government has proven each defendant guilty beyond a reasonable doubt.

I have prepared a verdict form that you should use to record your verdict. I will read over the form with you in a moment. If you decide that the government has proven a charge against one of the defendants beyond a reasonable doubt, say so by having your foreperson mark the appropriate place on the form. If you decide that the government has not proven a charge against one of the defendants beyond a reasonable doubt, say so by having your foreperson mark the appropriate place on the form.

Once you have decided each defendant's guilt or innocence on each charge, your foreperson should then date and sign the verdict form in the place indicated. After your foreperson signs the form, the other jurors should sign the form in the places indicated. You should then

inform the jury officer that you have reached a verdict.

The Court has no opinion. Let me finish by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You decide for yourselves if the government has proven the defendants guilty beyond a reasonable doubt.

And I'm going to save the final instruction for after the arguments of council, but let me go over the verdict form with you now.

Again, the verdict form has the same caption as the jury instructions, except that it says "verdict form" on the front instead of "jury instructions." And then on the second page it says: United States versus Walter M. Pugh, Jr. and Tyreese D. Pugh, case number CR-1-02-54.

We, the jury, in respect of the charges set forth in the indictment, do find Defendant Walter M. Pugh, Jr., and then next to each charge it's got either "not guilty" or "guilty," and you're to check one or the other, and it's got that for where it says: On count one as charged in the indictment, and that means in violation of 18 U.S.C. Section 371; Count two as charged in the indictment, 18 U.S.C. Sections 2113(a) and (d); and on count three as charged in the indictment, 18 U.S.C. Section 924(c)(1)(A)(ii). And again, those are "not guilty" and

"guilty" next to each one of those counts, and you're to check one or the other.

We the jury, in respect of the charges set forth in the indictment, do find Defendant Tyreese D. Pugh, same form again. You're to check either "not guilty" or "guilty" next to each one of the charges. And it says: On count one as charged in the indictment, 18 U.S.C. Section 371; on count two as charged in the indictment, 18 U.S.C. Section 2113 (a) and (d); on count four as charged in the indictment, 18 U.S.C. Section 924(c)(1)(A)(ii); and on count five as charged in the indictment, 18 U.S.C. Section 922(g)(1).

When you have completed all of the verdict forms, the foreperson should sign on the top line there where it says "foreperson" and put the date of your decision, and then each one of the other jurors should sign on the other lines.

Is there any objection -- are there any objections to the reading of the instructions?

MS. CROSS: Not on behalf of the United States, Your Honor.

MR. FELSON: Not on behalf of Tyreese Pugh.

MR. ANDREWS: Not on behalf of Walter Pugh.

THE COURT: All right. Okay. The charge has gone on -- that was definitely the most unexciting part of

the afternoon. The charge has gone on for the last hour.

Ms. Cross has indicated that she's going to take about 20 minutes for her opening argument.

As I mentioned to you in the beginning of the case, the government, because it has the burden of proof, opens and closes the argument. So it's sort of like an Oreo with the defendants as the cream in the middle. The government is the top and bottom, and the defendants go in the middle.

So we will start with Ms. Cross. Then we will have both defendants' counsel make their arguments, and then we will go back to Ms. Cross. All together, counsel have said the arguments are going to take about two hours.

I think, because this has been a long sit for me, I'm sure it must be for you. Why don't we take -- what I'm thinking of doing is probably taking, like, two ten-minute breaks somewhere in between, a ten-minute break now, and I think maybe a ten-minute break somewhere where it's logical, because I don't think it would be fair to Ms. Cross to start after having to sit for this length of time. So let's take a ten-minute break until a quarter of.

(Recess at 1:35 p.m.)

AFTER RECESS

THE COURT: Counsel, is there something you want to bring before the Court before we bring the jury back?

MR. FELSON: Yes. I have to renew the Rule 29 motion, and I guess I'll just add there is really not much to add. You have heard it all, except now I will be requesting that everything be stricken, although you have already overruled that, but that would be my only issue.

THE COURT: Thank you, Mr. Felson.

MR. ANDREWS: Your Honor, we renew our Rule 29. You have heard the arguments.

THE COURT: Right.

MR. ANDREWS: And the state of the evidence, I think, is arguably in flux. Therefore, you know, I am quite aware of what the Court's ruling would be but, for the record, re-make it.

THE COURT: Thank you.

Mr. Thapar.

MR. THAPAR: We submit on the same arguments we made.

THE COURT: The Court will once again deny the motion. And so we will proceed with argument.

Ms. Cross, have you got everything set up you need already?

MS. CROSS: I think so, Your Honor.

THE COURT: Okay. Mr. Felson, will you need to re-set up the table then?

MR. FELSON: No, I don't think so. I think --

THE COURT: We can do it with the jury in the box. That's okay.

(Off the record.)

(Jury present.)

THE COURT: Ms. Cross, are you prepared to make opening argument on behalf of the government?

MS. CROSS: I am, Your Honor.

THE COURT: Please proceed.

MS. CROSS: Thank you.

May it please the Court, Counsel, ladies and gentlemen of the jury, all of the evidence is in. And it's now time for you to decide this case based on the facts and the evidence presented. And, while your duty is not a simple one, fortunately, the facts in this case are.

Before I go into my argument, I would like to take this opportunity to thank you on behalf of the United States for your time, your attention and your service to this case. Thank you very much.

So the question for you to decide today is this: Has the United States presented evidence that you have seen and heard in this courtroom to establish the defendants' guilt beyond a reasonable doubt? And I submit to you that, based on the evidence, the answer is yes.

Let's look at what Walter and Tyreese Pugh are charged with. Count one charges them with conspiring to

rob the First National Bank of Southwestern Ohio. Count two charges them with armed bank robbery and aiding and abetting each other in committing the armed bank robbery offense. Count three charges Walter Pugh with using, carrying and brandishing a firearm during the bank robbery offense. Count four charges Tyreese Pugh with carrying, using and brandishing a firearm during the commission of the bank robbery. And, finally, count five charges Tyreese Pugh with being a felon in possession of a firearm at the home of Cortes Renfro.

Now, in considering the evidence, I ask that you keep your eye and your focus on the charges. Ask yourself when you're considering the evidence: What does this have to do with what the defendants are charged with?

Ladies and gentlemen, I submit to you that you have heard evidence in this case that has absolutely nothing to do with the charges in this case. So, when you look at a piece of evidence and you're considering what you hear, what you heard, and what you have seen, ask yourself: But what does that have to do with what the defendants are charged with?

Now, I'm not going to stand here for long and go over every detail or every piece of the evidence as if you weren't here the last four or five days and heard it for yourself when you did. I think that would be insulting to