1     UNITED STATES DISTRICT COURT

                C8 JUL 21  PM 1:59

2     SOUTHERN DISTRICT OF OHIO

3      WESTERN DIVISION
         -  -  -

4

UNITED STATES OF AMERICA,  : CRIMINAL ACTION CR-1-02-054

5            :

    Plaintiff,   : Cincinnati, Ohio

6            : Monday, February 3, 2003

  -vs-        :

7            :

TYREESE PUGH,      : Sentencing

8            :

    Defendant.   : 2:50 p.m.

9

         -  -  -

10

       TRANSCRIPT OF PROCEEDINGS

11   BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE

12         -  -  -

13

For the Plaintiff:  Wende Cross, Esq.

14         Amul Thapar, Esq.

          Asst. U.S. Attorney

15         Atrium II, Suite 400

          221 East Fourth Street

16         Cincinnati, Ohio  45202

17 For the Defendant:  Pro Se

  (Walter Pugh, Jr.)

18         J. Robert Andrews, Esq.

  (Legal advisor)   Schuh & Goldberg

19         2662 Madison Road

          Cincinnati, Ohio  45208

20

  (Tyreese Pugh)    Edward J. Felson, Esq.

21         Felson & Felson

          CBLD Center, Suite 1650

22         36 East Seventh Street

          Cincinnati, Ohio  45202.

23

Law Clerk:  Mike Rich

24 Courtroom Deputy:  Steve Snyder

  Court Reporter:  Betty Schwab

25

8 7

1                              PROCEEDINGS

2              THE COURTROOM DEPUTY:   The next case is

3    CR-1-02-54-2, United States of America v. Tyreese Pugh.

4    Will the parties please step forward?

5              MR. FELSON:   Edward Felson for Tyreese Pugh.

6              MS. CROSS:   Wende Cross for the United States,

7    Your Honor.

8              THE COURT:   And are you Tyreese Pugh?

9              THE DEFENDANT:   Yes, ma'am.

10             THE COURT:   And are you represented in this

11   proceeding by Edward Felson, a attorney who is present here

12   in court with you today?

13             THE DEFENDANT:   Yes, ma'am.

14             THE COURT:   On a former day, the defendant

15   pleaded not guilty to count one, conspiracy to commit a

16   bank robbery; count two, armed robbery; count three,

17   brandishing a firearm during a crime of violence; and,

18   four, possession of a firearm by a convicted felon.   The

19   jury trial began in this case on September 3, 2002, and on

20   September 10, 2002, the defendant was found guilty as

21   charged on all counts in which he was named in the

22   indictment.

23             At that time, the matter was refer to the United

24   States Probation Department for a presentence investigation

25   and report.   The Court has received the presentence report

1   prepared December 4, 2002.

2          Ms. Cross, have you received a copy of the

3   presentence report?

4          MS. CROSS:  I have, Your Honor.

5          THE COURT:  Mr. Felson, have you received a copy

6   of the presentence report?

7          MR. FELSON:  I have.

8          THE COURT:  And, Mr. Pugh, have you received a

9   copy of the presentence report?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Have you had an opportunity to

12   discuss it with Mr. Felson?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Then I would now like to address the

15   factual findings for sentencing.  The Court will accept the

16   presentence report as part of the sentencing facts in this

17   case and will proceed to address any additional sentencing

18   facts the parties wish to present.

19          Let me ask counsel, are any of the facts reported

20   in the presentence report disputed by the government or the

21   defendant?  Ms. Cross?

22          MS. CROSS:  No, Your Honor.

23          THE COURT:  Mr. Felson?

24          MR. FELSON:  Yes.  Actually, it wasn't going to

25   be, and then I just heard some substantial discussion about

```
 1   how Walter Pugh was sort of the leader in this, and my
 2   paragraph 48 indicates both appear equally culpable.  So it
 3   doesn't seem to be consistent with the co-defendant.
 4             I'm sort of surprised at the status, that the
 5   government is taking a different point of view for each.  I
 6   guess it appears that way anyway.  Maybe they're not, but
 7   where they're using one argument with Walter Pugh and then
 8   sort of undoing it with Tyreese and saying he's equally
 9   culpable.
10             THE COURT:  Are you saying he should get an
11   enhancement?
12             MR. FELSON:  No, no.  I'm just considering,
13   certainly not an enhancement, but maybe we would discuss a
14   downward departure for that reason.  Another issue that
15   I'll address in the future, but I'm just -- certainly, he's
16   not the one more culpable.  He was the son.  He was the
17   follower, and I'm just making that point that it sounded to
18   me like --
19             THE COURT:  So you're not disputing what's in
20   paragraph 48?
21             MR. FELSON:  I'm not disputing the zero.  We
22   don't want to depart upward.  We don't want any
23   enhancements, of course not.  But I just wanted to make
24   that point, that that statement "they appear equally
25   culpable" apparently was not used in Walter Pugh's, I
```

1  guess, presentence investigation.

2              THE COURT:  Okay.  Thank you, Mr. Felson.

3              Do you have any additional sentencing facts you

4  wish to present, Ms. Cross?

5              MS. CROSS:  No, Your Honor.

6              THE COURT:  Mr. Felson, any additional sentencing

7  facts?

8              MR. FELSON:  No.

9              THE COURT:  All right.  Then, there being no

10  objections to the factual statements contained in the

11  presentence report, the Court adopts those statements as

12  its findings of fact.

13              The defendant has been found guilty of all counts

14  in which he was named in the indictment.  Accordingly, the

15  defendant is adjudged guilty of case number CR-1-02-54-2,

16  conspiracy to commit a bank robbery in count one; armed

17  robbery in count two; brandishing a firearm during a crime

18  of violence in count four; and possession of a firearm by a

19  convicted felon in count five.

20              Pursuant to 18 United States Code Section 3553,

21  the Court makes the following findings of relevant fact

22  significant to the imposition of sentence.  In count one,

23  the defendant is guilty of violating 18 United States Code

24  Section 371, which is a Class B felony and subjects the

25  defendant to a maximum of 25 years imprisonment, a $250,000

1    fine, a period of supervised release of five years, and a
2    $100 special assessment.
3            In count two, the defendant is guilty of
4    violating 18 United States Code Section 2113(a) and (d) and
5    18 USC Section 2, which is also a Class B felony and
6    carries the same penalties as that in count one.
7            In count four, the defendant is guilty of
8    violating 18 USC Section 924(c)(1)(A)(ii), which is a Class
9    A felony and subjects the defendant to a mandatory minimum
10   7 years imprisonment to the sentence imposed on the count
11   two offense, a period of supervised release of five years
12   and a $100 special assessment.
13           And, finally, in count five the defendant is
14   guilty of violating 18 United States Code Section 922(g)(1)
15   and 924(a)(2), which is a Class C felony and subjects the
16   defendant to a maximum of ten years imprisonment, a
17   $250,000 fine, a period of supervised release of three
18   years, and a $100 special assessment.
19           However, the Sentencing Guidelines Manual
20   controls the determination of the sentence in this case.
21           Let me next deal with the issue of objections.
22   The final presentence report indicates there are no
23   remaining objections to the presentence report.
24           Let me ask counsel, are there any objections to
25   the presentence report that have not been previously

```
 1   raised?
 2           MR. FELSON:   The only issue, Judge, my client
 3   asked me on paragraph 69, the increase of one in the
 4   offense level.  I couldn't give him an answer for that.  I
 5   apologize.  It's not marked.  And if maybe the probation
 6   office could just help us out, we can get rid of that
 7   issue.
 8           THE COURT:  All right.  Ms. Cross, you want to
 9   rely on Ms. Egner again?
10           MS. CROSS:  Yes, Your Honor.
11           MS. EGNER:   I assume what you're referring to is
12   the multiple count adjustment.
13           THE COURT:  Ms. Egner, why don't you come up
14   here?  Because it's easier for Betty and I to hear you.
15           MS. EGNER:  I apologize.
16           THE COURT:   That's okay.
17           MS. EGNER:  I assume what you're referring to is
18   the multiple count adjustment; is that correct?
19           MR. FELSON:   The increase in offense level in
20   paragraph 69.
21           MS. EGNER:  I'm sorry.  Okay.  If you start with
22   paragraph 65 and read down, I think it's probably a little
23   bit easier.  What we're trying to do is come up with a
24   final determination as far as what the culpability in the
25   offense level would be for all this conduct put together.
```

1    And so you have your adjusted offense level for counts one

2    and two, and that's the highest offense level for each of

3    the groups.

4            Do you follow me so far?

5            And so, if you look at U.S. Sentencing Guidelines

6    Section 3D1.4, that is assigned one unit, just in one unit

7    for purposes of just getting it all together.  And then the

8    adjusted offense level for count five is 20.  And that 20

9    is six -- it's six levels lower than the first one.  So you

10   don't get a whole unit for that; you only get a half of a

11   unit.

12           It's a sign and a value score.  You really need

13   to read the Guidelines in conjunction with this.  But it's

14   a sign and a value to it.  Okay?

15           And if you look at the greater offense level

16   that's 26, you have one-and-a-half units, and

17   one-and-a-half units increases the offense level by one.

18   It's a severity index for combining the two groups.

19           Does that help you?

20           MR. FELSON:  (Speaking to the defendant.)  Does

21   it help you?

22           MS. EGNER:  It's tricky.  You really need to read

23   the Guidelines with it, I think.

24           THE COURT:  Ms. Egner, thank you for walking us

25   through that.  I think that was a masterful job.

1          Anything?  Any other objections?

2                MR. FELSON:  We notice that there has been a

3    recommendation for the lower end, so we're not objecting.

4    I have been through everything with him.

5                THE COURT:  I'm not getting to allocution yet.

6    I'm just doing objections.

7                MR. FELSON:  No objections.

8                THE COURT:  Any objections, Ms. Cross?

9                MS. CROSS:  No objections.

10               THE COURT:  All right.  Then let me go over what

11   the applicable guidelines are.

12               Tyreese Dorran Pugh was found guilty following a

13   trial by jury of the following:  Count one, conspiracy to

14   commit bank robbery, a Class B felony in violation of Title

15   18 United States Code Section 371; count two, armed

16   robbery, a Class A felony in violation of 18 USC Section

17   2113(a) and (d), and Section 2; count four, brandishing a

18   firearm during a crime of violence, which is a Class A

19   felony in violation of 18 United States Code Section

20   924(c)(1)(A)(ii); and count five, possession of a firearm

21   by a convicted felon, a Class C felony in violation of 18

22   United States Code Section 922(g)(1) and 924(a)(2).

23               The instant offenses occurred on April 24, 2002.

24   As a result, the 2002 edition of the Guidelines Manual was

25   used in calculating the offense level.  Counts one and two

1   are grouped together under Sentencing Guideline Section

2   3D1.2(b) because they represent a single course of conduct

3   with the same criminal objective and represent one

4   composite harm to the same victim.  Count two is the

5   substantive offense which was the sole object of the

6   conspiracy in count one.

7          Count four, which is a violation of 18 USC

8   Section 924, specifies a term of imprisonment to be imposed

9   and requires such sentence to run consecutively to any

10  other term of imprisonment and is not grouped under any

11  circumstances.  The sentence to be imposed on the count

12  four offense is determined by statute and imposed

13  independently.

14         The count five offense is a separate group

15  because it embodies conduct unrelated and subsequent to

16  counts one and two.

17         What I've got here for you is really an

18  explanation that was probably given better by Ms. Egner,

19  but I'll make an attempt at it.

20         Group One, which is counts one and two, the

21  guideline for 18 USC Section 2113 involving robbery is

22  found at Sentencing Guideline Section 2B3.1.  Subsection A

23  indicates the base offense level is 20.  Sentencing

24  Guideline Section 2B1.3(b)(1) provides for a two-level

25  increase if the property of a financial institution or post

1    office was taken.

2          Pursuant to Sentencing Guideline Section

3    2B3.1(b)(2)(B), the offense level is increased by six if a

4    firearm, although not discharged, was otherwise used.

5    However, this specific offense characteristic is not

6    applicable to avoid the potential for double counting

7    because sentencing under this guideline is being imposed in

8    conjunction with a sentence for an underlying offense.

9          According to Sentencing Guideline Section

10   2B3.1(b)(4)(B), two levels are added if anyone was

11   physically restrained to facilitate the commission of the

12   offense or escape from the scene.

13         Sentencing Guideline Section 2B3.1(b)(7)(C)

14   provides incremental increases to the offense level based

15   on value of the property taken over $10,000.  Since the

16   robbery involved $153,189, the offense level is increased

17   by two.  Although Sentencing Guidelines Section 3A1.3

18   states the offense level is increased by two if a victim

19   was physically restrained, no adjustment applies since this

20   factor is addressed in a specific offense characteristic to

21   Sentencing Guideline Section 2B3.1.  No other adjustments

22   apply, making the adjusted offense level or subtotal 26.

23         Now, Group Two, which is count five.  The

24   guideline for an 18 United States Code Section 922(g)

25   offense involving the unlawful receipt, possession or

1   transportation of firearms or ammunition is found at
2   Sentencing Guidelines Section 2K2.1.  Subsection (a)(4)
3   provides the base offense level of 20 since the defendant
4   committed the instant offense after sustaining one felony
5   conviction for a crime of violence or a controlled
6   substance offense.  There is no enhancement based on the
7   number of guns, as the defendant illegally possessed only
8   one firearm.  No other adjustments apply, making the
9   adjusted offense level or subtotal 20.

10      According to Sentencing Guidelines Section 3B1.4,
11  a multiple count adjustment, one unit is assigned a group
12  of the highest adjusted offense level.  The second group is
13  assigned one-half a unit based on the relationship in terms
14  of points Group One has to Group Two.  The assignment of
15  one-and-a-half units results in a one-level increase to the
16  highest offense level.  As a result, the combined adjusted
17  offense level is 27.

18      The defendant has not accepted responsibility for
19  his criminal behavior and, after being convicted by a jury,
20  maintains his innocence with respect to the instant
21  offenses.  As a result, no adjustment pursuant to
22  Sentencing Guideline Section 3E1.1 applies to this case.

23      The defendant has 17 criminal history points,
24  which establishes a criminal history category of VI.  Based
25  on a total combined offense level of 27 and a criminal

1   history category of VI, the guideline imprisonment range is

2   130 to 162 months.

3        Pursuant to Sentencing Guidelines Section

4   2K2.4(a)(2), the Guideline sentence for a violation of 18

5   United States Code Section 924(c), which is count four, is

6   the minimum term of imprisonment required by statute, which

7   in this case is 7 years or 84 months.

8        The authorized term of supervised release for

9   counts one and two, as well as count four, is at least

10  three but not more than five years, because the offenses

11  are Class A or Class B felonies.  For count five, which is

12  a Class C felony, the authorized term is at least two but

13  not more than three years.

14       Pursuant to 18 USC Section 3561(a)(1), the

15  defendant is not eligible for a term of probation because

16  counts one and two are Class B felonies.  In addition, the

17  count four offense, a Class A felony, requires a

18  consecutive sentence of imprisonment.

19       According to Sentencing Guidelines 2K2.4(b)(1),

20  where there is a federal conviction for the underlying

21  offense, a consolidated fine guideline is determined by the

22  offense level which would have applied to the underlying

23  offense absent a conviction under 18 USC Section 924(c).

24  In Group One, which encompasses counts one and two, the

25  adjusted offense level is 26.  Had there not been a

1    conviction under 18 USC 924(c), the offense level would

2    have been 32, which includes a six-level enhancement for

3    otherwise using a firearm.  As a result, the fine range for

4    an offender with a total combined offense level of 32 is

5    $17,500 to $175,000.

6           The First National Bank of Southwestern Ohio

7    suffered a loss of $153,189.  Restitution payment shall be

8    forwarded to the main branch of the bank at an address that

9    will be specified in the judgment and conviction order.

10          A special assessment in the amount of $100 is

11   mandatory for each felony.  Since Tyreese Pugh was

12   convicted of four felonies, the special assessment in the

13   amount of $400 is owed and due immediately.

14          Do the parties have any questions about the

15   statutory or guideline provisions applicable to the

16   imposition of punishment in this case?

17          Ms. Cross?

18          MS. CROSS:  No, Your Honor.

19          THE COURT:  Mr. Felson?

20          MR. FELSON:  No, Your Honor.

21          THE COURT:  All right.  Then we will now proceed

22   to the sentencing, and at this time the Court will

23   entertain anything the parties wish to say in mitigation or

24   aggravation of sentence.

25          Mr. Felson?

1    MR. FELSON:  Your Honor, this young man,

2    obviously you have heard a lot about it.  You have heard a

3    lot about him.  He, I think, last saw his father before

4    engaging in this conduct -- I think his father was gone for

5    17, 18 years.  He saw him when he was three.  He sees him

6    again and follows him down a road of really terrible

7    conduct, and I think it's sad.  I mean, really, bottom

8    line, it's sad.  And now he's looking at 17 to 20 years in

9    the penitentiary, and he's barely 20 years old.

10   And I mean, I don't know what to say except that

11   in my belief after all this discussion, had his father, he

12   not run into his father at this time and this issue about

13   not being brought up by his father and led down this path

14   by his father, I don't think he ever would have robbed a

15   bank.  He does have some receiving stolen properties and

16   attempted marijuana and trafficking, or actually it was

17   some cocaine he had attempted trafficking, but certainly

18   nothing of this nature and this level.  And now he's not

19   looking to get out until he's in his late 30's.

20   With regard to that, I'm hoping the Court will

21   see fit to give him the minimum, and I -- the minimum

22   permitted by law.  He doesn't seem to be a bad kid.  I know

23   he's gotten along with his mother.  His family has given

24   him support.  They have been here throughout the trial.

25   I think everybody is aware of not why he did it.

1    I don't know why people follow their fathers, why they
2    follow their relatives, why they think that somebody can do
3    no wrong when that person has done wrong their whole life.
4    I don't understand that psyche.  But certainly he followed
5    his father down this path, and I don't think there is any
6    question.  I think that the state, the government, has sort
7    of eloquently put the fact that Walter was in charge of the
8    money.  Walter was in charge of what car to take.  Walter
9    was in charge of what hotel to stay in.  The money was kept
10   by him.  And this young man followed along.  Obviously, he
11   played a role in it.

12              I don't think he's said too much during this
13   particular robbery, and I think he was just doing what he
14   was told to do, although he could have said no.  And I'm
15   sure he understands that.

16              With that, I'm going to -- hopefully, the
17   Court -- I don't know if Tyreese has anything to say to the
18   Court or anything to say to the victim, but I'm just hoping
19   the Court will see fit to give him the minimum she needs to
20   give him.

21              I would say in state court, obviously we're not
22   in state court, but the difference between the amount of
23   time you do here and in state court is substantial, and I
24   don't know what relevance that has except that this young
25   man's life is about to be ruined, and maybe the Court could

1  see fit to give the least amount of time under the

2  circumstances.

3         He does have a child.  He sees this parallel

4  coming where he's going to get out and his child won't have

5  seen him in 17 years.  And then what do we have?  I guess

6  this is society's problem.  It's going to go on for

7  thousands of years to come.  But here we are standing

8  before you asking for mercy.  Thank you.

9         THE COURT:  Thank you, Mr. Felson.

10         Mr. Pugh, anything you wish to say?

11         THE DEFENDANT:  No, ma'am.

12         THE COURT:  Ms. Cross, anything you wish to say?

13         MS. CROSS:  Yes, Your Honor, briefly.  I agree

14  with Mr. Felson to the extent this is a very sad case.

15  Before the Court stands a 22-year-old young man with a

16  criminal history category six, six, as a young man that's

17  been committing crimes since the age of 12, despite the

18  best efforts of Bessie Pew to offer him a stable

19  environment.

20         I won't say like father like son, because I'm an

21  optimist, and I believe that Tyreese, there is still some

22  hope for him, hope that he can be rehabilitated in prison,

23  hope that he can get some education, hope that he will get

24  additional help for whatever has driven him to commit all

25  these crimes, and hope that he will learn from his mistakes

1    and teach his son to avoid the same.

2            But the fact remains he committed a horrible

3    offense.  There are victims to this offense with faces and

4    names who have had a terrible experience.  For them, there

5    has to be some justice, and he still must be punished for

6    what he's done.  The United States just asks the Court to

7    follow the recommendation of the Probation Office in

8    sentencing him.

9            THE COURT:  Okay.  Thank you, Ms. Cross.

10           And, Ms. Tettenhorst, I will consider your

11   testimony with regard to Mr. Tyreese Pugh as well.

12           Anything further before the Court pronounces

13   sentence?

14           MR. FELSON:  No, Your Honor.

15           THE COURT:  It's the duty of the Court to

16   sentence the defendant at this time; however, counsel will

17   have a final chance to make legal objections before the

18   sentence is actually imposed.

19           Pursuant to the Sentencing Reform Act of 1984,

20   it's the judgment of the Court that the defendant be hereby

21   committed to the custody of the Bureau of Prisons for a

22   term of 130 months on counts one and two and 120 months on

23   count five.  Such sentences in counts one, two and five are

24   to be served concurrently with each other.  The reason for

25   the 120 on count five was that there was a maximum of ten

1   years on that one.

2        The defendant is hereby committed to the custody

3   of the Bureau of Prisons for a term of 84 months on count

4   four, such sentence to be served consecutively to the

5   sentences imposed on counts one, two, and five.

6        The defendant shall participate in a mental

7   health evaluation and/or mental health counseling at the

8   direction of the Bureau of Prisons.

9        Following a sentence of imprisonment, the

10  defendant is ordered to be placed on supervised release for

11  a period of five years on counts one, two, four, and three

12  years on count five, such terms to be served concurrently.

13       Upon release from incarceration, the defendant is

14  ordered to report in person to the probation office in the

15  district to which he is released within 72 hours.

16       As a condition of supervised release, the

17  defendant shall pay any unpaid balance of his monetary

18  penalties.  No interest shall accrue on any unpaid balance.

19  The defendant shall not commit another federal, state or

20  local crime and is prohibited from possessing a firearm or

21  other dangerous device.  The defendant shall not possess

22  any illegal controlled substances.  And, in addition, the

23  defendant shall comply with the standard conditions of

24  supervised release as adopted by the Court for the Southern

25  District of Ohio.

1          As a special condition of supervised release, the
2     defendant is ordered to refrain from any unlawful use of a
3     controlled substance and to submit to one drug test within
4     15 days of release and at least two periodic drug tests
5     thereafter.
6          The Court finds that the defendant is not capable
7     of paying a fine.  Pursuant to 18 USC Section 3663, the
8     defendant is ordered to make restitution in the amount of
9     $153,189 jointly and severally with co-defendant Walter
10    Pugh, Jr. to first National Bank of Southwestern Ohio.
11    Restitution is due immediately.
12         The defendant shall participate in a substance
13    abuse treatment program, either inpatient or outpatient, at
14    the direction of his probation officer, which may include
15    testing.  The defendant shall participate in the mental
16    health treatment program at the direction of his probation
17    officer.
18         And a special assessment of $400 is owed and due
19    immediately.
20         Mr. Pugh, I agree with everything that was said
21    by both counsel.  You know, I hope we can break the cycle
22    with you.  You know, I'm giving you the minimum amount,
23    because I hope, when you get out, you can come back into
24    society, meet your son, and live the rest of your life
25    lawfully.

1          In that regard, is there a geographic location

2    that you would like to be closest to?  You want to be

3    closest to Cincinnati?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Okay.

6          MR. FELSON:  And also I think he reiterates what

7    his father said; he would like to speak to his appellate

8    counsel before being shipped off wherever he's going.

9          THE COURT:  All right.  We'll arrange for that as

10   well.

11         Do you want to participate in the substance abuse

12   program while you're in custody?  I'm not going to order it

13   if you don't want to do it.

14         THE DEFENDANT:  All the programs they got,

15   everything.

16         THE COURT:  Okay.  All right.  Because my next

17   question is, you don't have your high school degree yet,

18   and I'll order that you participate in the Bureau of

19   Prisons Substance Abuse Program.  Would you like the Court

20   to recommend that you participate in a program to earn your

21   GED?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Okay.  The Court will order that as

24   well, that you participate in the Bureau of Prisons GED

25   Program.

1          Are you interested in an apprentice program?

2          MR. FELSON:  Learn a trade.

3          THE COURT:  To learn some kind of job skill?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  I will also order that.  I'll

6    recommend that, which hopefully will get you preference.

7          Mr. Felson, do you have any objections as to why

8    the sentence should not be imposed as stated?

9          MR. FELSON:  No.  I mean I -- you know, there is

10   no reasonable objection.

11         THE COURT:  Ms. Cross, any objection?

12         MS. CROSS:  No, Your Honor.

13         THE COURT:  Let me tell you about your rights on

14   appeal.  Both parties are notified by this Court that you

15   have a right to appeal the sentence.  If you're indigent

16   and cannot retain a lawyer, you may apply and one will be

17   appointed to represent you on your appeal.  You're further

18   advised, in accordance with the provisions of Rule 4(b) of

19   the Rules of Appellate Procedure, you must file your notice

20   of appeal with the clerk of the United States District

21   Court within ten days of the filing of judgment.

22         The Court does hereby advise you that, if you so

23   request, the clerk the Court will prepare and file

24   immediately a notice of appeal on your behalf.

25         It's further ordered that the defendant shall

1   notify the United States Attorney for the Southern District
2   of Ohio within 30 days of any change in resident or mailing
3   address until all special assessments imposed by this
4   judgment are fully paid.
5        If you request, Mr. Pugh, I'll order the clerk of
6   courts to file your notice of appeal immediately after the
7   judgment is filed.
8        THE DEFENDANT:  Yes, ma'am.
9        THE COURT:  Okay.  And, Mr. Felson, I take it
10  that you would like someone else to represent him on his
11  appeal.
12       MR. FELSON:  That is appropriate, yes.
13       THE COURT:  All right.  I'm going to remand
14  Mr. Pugh also to the custody of the United States Marshal,
15  and we will work with the marshal's office to see if we can
16  get appellate counsel appointed as soon as possible so they
17  can confer with both Mr. Pughs before they go off to
18  whatever federal facilities they're going to.
19       Mr. Pugh, good luck.  I hope I never see you back
20  here again.
21       THE DEFENDANT:  Thank you.
22            COURT ADJOURNED AT 3:20 P.M.
23
24
25

1                        C E R T I F I C A T E

2            I, Betty J. Schwab, the undersigned, do

3      hereby certify that the foregoing is a correct

4      transcript from the record of the proceedings in

5      the above-entitled matter.

6

7                        _Betty J. Schwab_____
                         BETTY J. SCHWAB, RPR
8                        Official Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25