NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

INFORMATION COPY
MANDATE NOT YET ISSUED

No(s) 06-3521/3522

DIS. CT. # 02-00054

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

APR 0 9 2008

**LEONARD GREEN, Clerk**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| WALTER M. PUGH; TYREESE PUGH, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| *Defendants-Appellants.* | ) | DISTRICT OF OHIO |
| | ) | |
| | ) | OPINION |
| | ) | |

**BEFORE:** SUHRHEINRICH, COLE, and GIBBONS, Circuit Judges.

**R. GUY COLE, JR.** Defendants Tyreese Pugh and his father Walter Pugh appeal their convictions and sentences related to an armed bank robbery. Tyreese argues (1) that the district court erred when it allowed a witness to testify that after the robbery Walter stated "we hit a lick;" and (2) that he should have received a lesser sentence. In a separate appeal, Walter argues (1) that the district court erred when it allowed the lead investigator of the bank robbery to testify that he "was given the name of Walter Pugh as a possible suspect;" (2) that the district court erred in applying a two-point sentencing enhancement for Walter's role as a leader of the offense; and (3) that the district court erroneously used a preponderance-of-the-evidence standard in applying the two-point enhancement.

For the following reasons, we **AFFIRM** the convictions and sentences.

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

## I. BACKGROUND

On May 15, 2002, Defendants were indicted in the United States District Court for the

Southern District of Ohio for conspiracy to commit armed bank robbery in violation of 18 U.S.C.

§ 371; for aiding and abetting each other in armed bank robbery in violation of 18 U.S.C. § 2113(a)

& (d) and 18 U.S.C. § 2; and for using a firearm during the bank robbery in violation of 18 U.S.C.

§ 924(c)(1)(A)(ii). Tyreese was also indicted for being a felon in possession of a firearm in violation

of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On September 10, 2002, after a six-day trial, a jury

convicted Walter and Tyreese on all counts. On appeal, this Court reversed the convictions, except

for Tyreese's conviction for being a felon in possession of a firearm, because the Court found that

an out-of-court identification of a nontestifying witness violated Defendants' rights under the

Confrontation Clause. *See United States v. Pugh*, 405 F.3d 390 (6th Cir. 2005).

A retrial was held before a jury on November 18, 2005, and the following evidence was

introduced. On April 24, 2002, at approximately 2:20 p.m., two armed men robbed the First

National Bank in Hamilton, Ohio. One robber, carrying a shotgun and wearing a black shirt, a ball

cap, and a mask, ordered the bank manager to lie face down. The other robber, who was unmasked

and wore a checkered shirt and a skull cap, carried a handgun and held a Black & Mild cigar in his

mouth. He ordered the tellers to put cash from their drawers and the vault into a bag. The men left

with approximately $153,900 in cash and drove away in what the bank manager described as a late-

eighties or early-nineties Oldsmobile.

Detective James Calhoun of the Hamilton Police Department testified that upon arriving at

the scene, he obtained the bank's surveillance camera videotape, made still photographs of the armed

robbers, and dispatched to local patrol units a general description of the men and the getaway car.

Detective Calhoun testified that he continued reviewing information at police headquarters that day,

and when he returned to the station the next morning, he "was given the name of Walter Pugh as a

possible suspect." He also was advised that Bessie Pew, Walter's sister and Tyreese's aunt, owned

a four-door maroon Oldsmobile.

Pew testified that Walter's ex-girlfriend, Shanell Holston, called her on the morning of April

25, 2002, and told her that she read a news article in the paper that day about a bank robbery and that

the police were looking for a maroon car. Pew then called the police station to find out if it was her

car, a 1988 four-door maroon Oldsmobile Cutlas Ciera, that was involved in the robbery. She drove

her car to the station and told Detective Calhoun that Walter had been in possession of her car for

a couple of weeks and had returned it the day before a little after 3:00 in the afternoon. She also told

Detective Calhoun that the person in the checkered shirt in the bank surveillance photo looked like

her brother Walter and that the other man could be Tyreese, but that she was not sure.

Stephanie Luster, Tyreese's girlfriend in 2002, also identified Walter in the surveillance

photo but stated that she could not identify the other man because his face was masked. She testified

that in April 2002, the month of the robbery, she left Ohio with Tyreese and Walter and drove south,

stopping overnight at a hotel in Tennessee. Luster testified that she saw money in loose bills and in

rubber bands on Walter's hotel bed and that when she asked about the money, Walter replied, "we

hit a lick." Luster stated that the group drove to Atlanta the following day where Walter and Tyreese

purchased clothes for everyone; they returned to Ohio a few days later.

Holston testified that once the group returned to Hamilton, she met up with them to switch

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

cars. Walter and Tyreese transferred several items from Walter's Cadillac to Holston's car, including a shotgun, revolver, new clothes, and a bag containing money. Leaving the Cadillac behind, Holston drove Walter, Tyreese, and Luster to Mt. Healthy, Ohio to find a hiding spot for the group. She then went home and decided to contact an officer who was also a family friend to tell him where the police could find Defendants. She agreed to call Walter from the Hamilton County Sheriff's Office and allowed the police to tape the conversation, during which Walter told her that he had $100,000 for her father "to wash" and that he received the money from a "big lick." Holston also testified that Walter was the man in the bank surveillance photograph.

Walter and Tyreese were arrested in Mt. Healthy on May 3, 2002. Tyreese was in possession of a shotgun at the time of his arrest.[1] A search of the house, pursuant to a warrant, also revealed a revolver and newly purchased clothes. Police recovered the Cadillac, which contained a parking permit from a Travel Lodge in Atlanta, a bag with ammunition, including .12 gauge shotgun shells, and an empty box of Black & Mild cigars.

On November 18, 2005, after the retrial, the jury convicted Walter and Tyreese on all counts. On March 13, 2006, the district court sentenced Walter to 221 months' imprisonment, five years of supervised release, and restitution. In determining this sentence, the district court found by a preponderance of the evidence that Walter's offense level should be increased by two points for his aggravating role in the offense under U.S.S.G. § 3B1.1(c) and Application Note 2. The district court sentenced Tyreese to 221 months' imprisonment, five years supervised release, and restitution.

---

[1]Tyreese's felon-in-possession charge, which was upheld on the original appeal, was based upon the gun in his possession during this May 3, 2002 arrest.

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

Walter and Tyreese timely appealed.

## II. ANALYSIS

Both Defendants contend that the district court admitted hearsay statements in violation of their rights secured by the Confrontation Clause of the Sixth Amendment. In addition, both Defendants challenge their sentences. We address each argument in turn.

### A. Confrontation Clause

We review evidentiary rulings for abuse of discretion. *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997)). Confrontation Clause claims, however, are questions of law that are reviewed de novo. *Id.* (citing *United States v. Johnson*, 440 F.3d 832, 842 (6th Cir. 2006)).

#### 1. Tyreese Pugh

Tyreese argues that the district court erred in denying his motion for a mistrial after Stephanie Luster testified that Walter stated, "we hit a lick," in response to her inquiry about the money on the hotel bed. Counsel for Tyreese objected and moved for a mistrial on the basis that Luster's testimony violated Tyreese's Sixth Amendment right to confrontation because the declarant, Walter, did not testify and, therefore, could not be cross-examined. The Government argued to the district court that the circumstances surrounding the statement provide a sufficient indicia of reliability and thus were admissible against both Tyreese and Walter. The district court denied the motion for mistrial but sustained the objection due to concerns of a violation under *Bruton v. United States*, 391 U.S. 123, 137(1968), or *Crawford v. Washington*, 541 U.S. 36 (2004), and subsequently admonished the jury not to consider the statement as evidence against Tyreese: "Ladies and gentlemen, I do want

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

to advise you that the statement that Miss Luster attributed to Walter Pugh that 'we hit a lick' is

admissible as it relates to defendant Walter Pugh but not defendant Tyreese Pugh." (JA 442.)

On appeal, Tyreese contends that, even though the jury was instructed not to consider the

testimony as evidence against him, because the statement implicated him and he had no opportunity

to cross-examine Walter, admission of the evidence violated his confrontation rights under the rule

set forth in *Bruton*: "An accused is deprived of his rights under the Confrontation Clause when the

confession of a nontestifying codefendant that implicates the accused is introduced into evidence at

their joint trial . . . even if the jury is instructed to consider the confession only as evidence against

the codefendant." *United States v. Cope*, 312 F.3d 757, 780-81 (6th Cir. 2002) (citing *Bruton*, 391

U.S. at 137). Tyreese's argument fails, however, because the statement at issue — "we hit a lick"

— is nontestimonial in nature, and therefore, does not implicate the Confrontation Clause as

analyzed under *Bruton* or otherwise. *See Davis v. Washington*, 126 S. Ct. 2266 (2006); *Crawford*,

541 U.S. at 36.

The Confrontation Clause of the Sixth Amendment provides that "in all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

U.S. Const. amend. VI. The Supreme Court in *Crawford* and *Davis* held that because the

Confrontation Clause is concerned with testimonial statements only, once it is determined that a

statement is nontestimonial, only the rules of evidence may bar its admission. *See United States v.*

*Arnold*, 486 F.3d 177, 192-93 (6th Cir. 2007) (en banc) ("The Confrontation Clause, *Davis* explains,

is 'solely concerned with testimonial hearsay,' . . . meaning that the only admissibility question [for

a nontestimonal statement] is whether the statement satisfies the Federal (or State) Rules of

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

Evidence." (quoting *Davis*, 126 S. Ct. at 2274 (stating that the Confrontation Clause's "focus on testimonial hearsay" "must fairly be said to mark out not merely its 'core,' but its perimeter")); *see also Whorton v. Bockting*, 127 S. Ct. 1173, 1183, (2007) ("[T]he Confrontation Clause has no application" to "out-of-court nontestimonial statement[s].").

Thus, after *Crawford* and *Davis*, the initial question under the Confrontation Clause is whether the statement is testimonial or nontestimonial hearsay. If it is testimonial hearsay, the defendant must have an opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 36. If it is nontestimonial hearsay, the statement is admissible if it falls within an exception to the hearsay bar. *See Arnold*, 486 F.3d at 192-93; *Davis*, 126 S. Ct. at 2274. Although *Crawford* did not specify a "comprehensive definition" of what is testimonial, it cited "ex parte testimony at a preliminary hearing" and "[s]tatements taken by police officers in the course of interrogations," as examples of "this core class of 'testimonial' statements." *Crawford*, 541 U.S. at 51-52.

In the instant case, no one suggests that Walter's statement, "we hit a lick," falls into such category. Indeed, no argument can be made that Walter was acting as a witness, i.e., "bearing testimony," against Tyreese when he made the statement to Luster. Luster was not a police officer or government agent seeking to elicit statements to further prosecution. To the contrary, Walter made the statement to Luster during a private, casual conversation in front of Tyreese. No reasonable person in Walter's position would "anticipate his statement being used against [Tyreese] in investigating and prosecuting the crime." *See United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005); *see also United States v. Franklin*, 415 F.3d 537, 545 (6th Cir. 2005) (concluding that the statement "we hit a truck" made by the nontestifying codefendant to a close friend a few weeks

- 7 -

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

after an armed truck robbery was admissible even though it inculpated the defendant because the statement did not constitute testimony withing the meaning of *Crawford*).

Because the statement at issue is not testimonial in nature, the Confrontation Clause is not implicated, and an analysis under *Bruton* is unnecessary. *Crawford*, 541 U.S. at 51 ("An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted."); *see also United States v. Taylor*, 2007 WL 4270832, at \*9 (7th Cir. 2007) (no *Bruton* argument to admission of a nontestimonial statement because "hearsay evidence that is nontestimonial is not subject to the Confrontation Clause"). The only requirements that must be met in order to admit a nontestimonial hearsay statement are set forth in the Federal Rules of Evidence. *See Arnold*, 486 F.3d at 192-93; *Davis*, 126 S. Ct. at 2274. Here, the statement comes in against Walter as an admission of a party opponent. Fed. R. Evid. § 801(d)(2). In the absence of a hearsay exception (and none was offered by the Government), the statement cannot come in against Tyreese; the district court, however, addressed this issue by providing an appropriate limiting instruction.

Accordingly, the district court did not err when it allowed, with a limiting instruction, the admission of Luster's testimony against Walter.

### 2. Walter Pugh

Walter also claims a violation of his Sixth Amendment rights under the Confrontation Clause. Specifically, Walter argues that the district court erred when, over objection, it allowed Detective Calhoun to testify that the morning following the robbery, he "was given the name of Walter Pugh as a possible suspect." Although the discussion relating to the objection before the trial

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

court is rather confusing, it is clear that Walter was objecting to the out-of-court statement made by some unknown person to Calhoun that Walter was a possible suspect in the bank robbery. The court overruled the objection, concluding that the statement was not offered for the truth of the matter asserted (i.e., that Walter was a suspect) but rather to show the effect on the listener (i.e., why Calhoun proceeded to investigate Walter by interviewing his sister Bessie), and, alternatively, to rebut Defendants' attack of the "veracity of the police investigation."

As we have noted, statements that are testimonial in nature "may not be offered by the government to establish the guilt of an accused absent an opportunity for the accused to cross-examine" the witness. *Cromer*, 389 F.3d at 670 (citing *Crawford*, 541 U.S. 36). However, "[t]he admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay — in other words, it must be offered for the truth of the matter asserted." *Pugh*, 405 F.3d at 399 (citing *Cromer*, 389 F.3d at 676 ("The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.")). Further, testimony that does not reveal any specific statement made by a confidential informant (or other nonestifying declarant) and merely provides background information regarding the course of investigation does not violate the Confrontation Clause. *See Cromer*, 389 F.3d at 676-77 (concluding that testimony of officer that he "had information" about drug dealing occurred at a particular address was permissible as background information even though the jury could link that address to the defendant).

The lack of any detail surrounding the statement made to Detective Calhoun about Walter being a possible suspect complicates a determination of whether the statement is testimonial in

nature. Additionally, the statement at issue, "I was given the name of Walter Pugh as a possible

suspect," is not a specific statement of the nontestifying declarant and merely provides background

information. *See Cromer*, 389 F.3d at 676. In any event, because the statement was not offered to

prove the truth of the matter asserted, but instead to demonstrate the affect on Calhoun and to explain

his steps in the investigation, the statement was not hearsay, and the district court did not err in

admitting it. *See United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989) (explaining that if a

statement is offered for its effect on the listener, to explain the listener's conduct, it is not hearsay

as defined by the Federal Rules of Evidence).

## B. Sentencing

### 1. Tyreese Pugh

Tyreese argues that he should have received a lower sentence for three reasons: (1) he had

a minor role in the offence; (2) his criminal history was over-represented by misdemeanors; and (3)

he presented mitigating circumstances.

Under *Rita v. United States*, 127 S. Ct. 2456 (2007), and *Gall v. United States*, 128 S. Ct. 586

(2007), we review a district court's sentencing determination for reasonableness under a deferential

abuse-of-discretion standard. *United States v. Hollman*, 2008 WL 111028, at *2 (6th Cir. 2008)

(citing *Rita*, 127 S. Ct. at 2459; *Gall*, 128 S. Ct. at 591, 597). "Reasonableness has both substantive

and procedural components, and accordingly, we consider not only the length of the sentence but

also the factors evaluated and the procedures employed by the district court in reaching its sentencing

determination." *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007) (citations and internal

quotation marks omitted). Under *Gall*, this Court must ensure that "the district court committed no

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines

range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a

sentence based on clearly erroneous facts, or failing to adequately explain the chosen

sentence-including an explanation for any deviation from the Guidelines range." *Gall*, 128 S. Ct.

at 597. In addition, after completing this procedural review, we must ensure that the sentence is

substantively reasonable based on "the totality of the circumstances." *Id.* This Court may apply a

nonbinding, rebuttable presumption of reasonableness to a within-Guidelines sentence. *Rita*, 127

S. Ct. at 2462-63; *see also Jones*, 489 F.3d at 252.

After reviewing the record, we conclude that the district court imposed a reasonable sentence.

Tyreese does not argue, nor does the record indicate, that the district court incorrectly calculated his

Guidelines range or that the district court treated the Guidelines as mandatory. During a

comprehensive sentencing hearing, the district court considered the relevant § 3553(a) factors, the

Guidelines calculations, the evidence at trial, and the arguments of counsel before imposing the

sentence. The district court noted the violent nature of the offense and that Tyreese's specific role

in holding a shotgun in the face of the branch manager while Walter collected the money was not

minor.

The district court addressed Tyreese's extensive criminal history, including a conviction that

he received in the time between the two trials for the bank robbery. The court explained that

although Tyreese had twenty criminal history points, placing him in Category VI, offenders are

placed in Category VI with as little as fourteen points. Despite that fact that six of Tyreese's points

were, therefore, not "otherwise considered" within the range, the court imposed a sentence in the

middle of the Guidelines range.   Tyreese cites no support for his assertion that some of his misdemeanor convictions should not have been considered in the criminal history category calculation, or that his category would be different were it not for these prior convictions.

The court acknowledged Tyreese's argument that "he never really had a chance to succeed" but stated that the imposed mid-Guidelines sentence reflected the seriousness of the offense, promoted respect for the law, provided just punishment, offered deterrence to others, and protected the public.   We, therefore, conclude that the district court imposed a reasonable sentence.

### 2. Walter Pugh

Walter presents two challenges to his sentencing: (1) the district court erred in applying a two-level enhancement under U.S.S.G. § 3B1.1(c) where the evidence was insufficient to find that Walter played any greater role in the bank robbery than did his codefendant; and (2) judicial factfinding at sentencing, under a preponderance-of-the-evidence standard, is unconstitutional.

The standard of review for a district court's application of an aggravating-role enhancement is unsettled. *United States v. Burley*, 241 F. App'x 290 (6th Cir. 2007) (citing *United States v. Milan*, 218 F. App'x 492, 495-96 (6th Cir. 2007) (upholding the application of a § 3B1.1(a) enhancement under both deferential and de novo review); *United States v. McDaniel*, 398 F.3d 540, 551 & n.10 (6th Cir. 2005) (declining to resolve the question of the applicable standard of review)). "This Court has traditionally reviewed the district court's factual findings for clear error and its legal conclusions de novo." *Id.* (internal citations and quotations removed).   In *Buford v. United States*, 532 U.S. 59, 66 (2001), the Supreme Court held that "in light of the fact-bound nature of the legal decision," an appellate court should review deferentially a district court's application of § 4B1.2, the

- 12 -

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

crime-of-violence enhancement. This Court has since "reserve[d] judgment as to whether the district

court's application of § 3B1.1 . . . should be reviewed deferentially or de novo." *United States v.*

*Henley*, 360 F.3d 509, 516 (6th Cir. 2004). We need not resolve the issue in this case, however,

because under either standard of review, the district court did not err in applying the enhancement.

We review Walter's constitutional challenge to his sentence de novo. *United States v. Copeland*,

321 F.3d 582, 601 (6th Cir. 2003).

We quickly dispose of Walter's latter argument, which he concedes is foreclosed by our

precedent. A defendant's Sixth Amendment right to have facts proven beyond a reasonable doubt

is limited to those facts that increase the defendant's sentence beyond the statutory maximum for the

offense charged. *United States v. Rogers*, 2008 WL 116289, at *2 (6th Cir. 2008) (citing *Apprendi*

*v. New Jersey*, 530 U.S. 466, 490 (2000); *United States v. Crowell*, 493 F.3d 744, 749 (6th Cir.

2007)). Here, Walter does not argue that the district court increased his sentence beyond the

statutory maximum for his convictions; he instead argues that the court violated his Sixth

Amendment right to a trial by jury when it found facts by a preponderance of the evidence to

determine the advisory sentencing range under the Guidelines. Sixth Circuit authority, however,

permits this preponderance-of-the-evidence fact-finding. *Rogers*, 2008 WL 116289, at *3 (citing

*United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006) (explaining that "using a preponderance

of the evidence standard post-*Booker* does not violate . . . the Sixth Amendment right to trial by

jury") and *United States v. Booker*, 543 U.S. 220, 232-33 (2005) (holding that a sentencing court is

permitted to find facts by a preponderance of the evidence in order to appropriately determine the

advisory Guidelines range)).

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

Walter further argues that, regardless of the standard, the evidence was insufficient for the

court to apply the two-level enhancement. Section 3B1.1(c) provides for a two-level enhancement

"[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity."

Application Note 2 provides as follows:

> To qualify for an adjustment under this section, the defendant must have been
> the organizer, leader, manager, or supervisor of one or more other participants. An
> upward departure may be warranted, however, in the case of a defendant who did not
> organize, lead, manage, or supervise another participant, but who nevertheless
> exercised management responsibility over the property, assets, or activities of a
> criminal organization.

U.S.S.G. § 3B1.1, Commentary, Application Note 2.

Walter argues that the facts established at trial were insufficient to support application of the

enhancement. The district court rejected the objection at the sentencing hearing and, under the

preponderance standard, found that the enhancement was appropriate based on the following

evidence: Walter is Tyreese's father; Walter secured the getaway car from his sister Bessie; Walter

was the one who physically took the money from the tellers and the bank vault; the robbery proceeds

were kept in Walter's hotel room and under his control after the robbery; and, significantly, in the

recorded telephone call with Holston, Walter referred to the money as his and planned to have it

"washed."

These factors, taken together, are sufficient to show that Walter was a manager, leader, or

organizer of the robbery and that Walter exercised management responsibility over the property,

assets, or activities of the crime. Accordingly, the district court committed no error in applying the

- 14 -

*Nos. 06-3521, 06-3522*
*United States v. Pugh*

enhancement pursuant to U.S.S.G § 3B1.1(c) and Application Note 2.

## V. CONCLUSION

For these reasons, we **AFFIRM** Defendants' convictions and sentences.