UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

TYREESE DORRAN PUGH,

    Defendant.

Criminal Action No.1:02-cr-54

Bunning, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

On November 30, 2009, Defendant Tyreese Dorran Pugh, having exhausted all appeals through the United States Supreme Court, filed a motion to vacate his conviction pursuant to 28 U.S.C. §2255.  The United States filed no response to that motion, which has been referred to the undersigned magistrate judge for preliminary review and a report and recommendation.  Having completed that review, I now recommend that Defendant's motion be **DENIED** without requiring a formal response from the United States, because it is barred by the applicable statute of limitations and otherwise is without merit.

**I. Analysis**

Rule 4(b) of the Rules on Motion Attacking Sentence Under §2255 provides: "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."  Although the United States was automatically served with a copy of the motion when it was filed in 2009, Rule 4 provides for preliminary review by the Court prior to requiring any formal response from the United States.  Regrettably,

Court review of the motion was delayed as a result of an administrative error. However, now that the Court has completed its preliminary review of Defendant's motion, no response will be required of the United States because it is clear that the Defendant is not entitled to relief.

### A. Defendant's Motion to Vacate is Time Barred

Once a judgment of conviction has become "final," a defendant has one year in which he can file a motion to vacate his conviction or sentence pursuant to 28 U.S.C. §2255. See 28 U.S.C. §2255(f)(1). In this case, Defendant's judgment of conviction became "final" on November 12, 2008 when his petition for writ of certiorari was denied by the United States Supreme Court. (*See* Doc. 193); *see also Johnson v. United States,* 246 F.3d 655, 657 (6th Cir. 2001)(direct review concludes when the Supreme Court either denies the petition for writ of certiorari or decides the case on the merits). Thus, Defendant only had until November 12, 2009 in which to file his §2255 motion. However, Defendant's motion was not signed by Defendant and placed in the prison mailing system until November 24, 2009, and was not received and docketed by this Court until November 30, 2009. (Doc. 197).

This court has no authority to amend the relevant statute of limitations but may in some instances apply equitable tolling. *See Holland v. Florida,* 130 S. Ct. 2549, 2560 (2010) and *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). A defendant seeking to file an otherwise untimely §2255 motion bears the burden of showing that he is entitled to equitable tolling. *See McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). The doctrine is to be "sparingly" applied. *See Robinson v. United States*, 582 F.Supp.2d 919,

924 (N.D. Ohio 2008)(denying application of doctrine for motion filed 3 days out of time). The Supreme Court has stated that a prisoner seeking post-conviction relief is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing. *Holland v. Florida*, 130 S.Ct. at 2562 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). No basis for equitable tolling is suggested on the record presented. The record reflects that Defendant's motion was not placed in the prison mail system until twelve days following the expiration of the statutory one-year limitations period. Thus, the motion is unequivocally time-barred and should be denied without the necessity of the United States filing a written response.

### B. Alternative Discussion of the Merits

In the alternative, the Court could deny the motion on the merits because it seeks relief solely based upon trial counsel's failure to move for a directed verdict of acquittal. Defendant's entire argument is as follows:

> The trial record will reflect that [Defendant] was never identified as being in the bank or being the one who robbed the bank. No evidence was presented linking me as being the person who robbed the bank. Counsel was inneffective [sic] for failing to move for a directed verdict of aquittal [sic] when sufficient evidence was not produced during trial to place me in the bank at anytime or linking me to the bank robbery.

Doc. 197 at 4.

A court can bypass analysis of whether equitable tolling should be applied where the merits of the case "can be resolved in a straightforward manner and will also result in the denial of [the 2255] motion." *Pough v. United States*, 442 F.3d 959, 965 (6th Cir. 2006). Defendant's argument in essence asserts that his attorney was incompetent for failing to

3

challenge the sufficiency of the evidence against him through a motion for a directed verdict. However, to prove the ineffective assistance of counsel, a defendant must overcome a strong presumption of competence. *See Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006). The seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), established the two key elements of a claim of ineffective assistance of counsel. The first prong requires a showing of error - that counsel was actually deficient in some way. *Id.,* 466 U.S. at 678. The second prong requires a showing that "the deficient performance prejudiced the defense." *Id.* To establish the prejudice prong, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, Defendant can prove neither element of his claim. Review of the evidence summarized by the Sixth Circuit Court of Appeals, in affirming Defendant's conviction after retrial, belies any argument that there was "no evidence" to support his conviction. Therefore, it was not error for his attorney to fail to move for a directed verdict, and no prejudice resulted from the failure of counsel to so move.

In Defendant's first appeal, the Sixth Circuit reversed Tyreese's conviction for bank robbery on the basis that an out-of-court identification of a nontestifying witness, Tyreese Pugh's girlfriend's mother, violated Defendant's rights under the Confrontation Clause. *See United States v. Pugh,* 405 F.3d 390 (6th Cir.2005). The Sixth Circuit noted that the Defendant and his co-defendant were convicted largely on the basis of circumstantial evidence, and that the admission of the erroneous testimony "arguably had a more harmful effect on Tyreese's case because [the witness's] out-of-court statement was the only

4

uncompromised testimonial evidence that positively identified Tyreese as one of the robbers." *Id*. at 402.

Both Tyreese Pugh and his co-defendant Walter Pugh[1] were tried a second time on November 18, 2005, at which time the prosecution clearly presented a very strong case. In affirming both convictions on retrial, the Sixth Circuit summarized the evidence that was introduced at the second trial:

> On April 24, 2002, at approximately 2:20 p.m., two armed men robbed the First National Bank in Hamilton, Ohio. One robber, carrying a shotgun and wearing a black shirt, a ball cap, and a mask, ordered the bank manager to lie face down. The other robber, who was unmasked and wore a checkered shirt and a skull cap, carried a handgun and held a Black & Mild cigar in his mouth. He ordered the tellers to put cash from their drawers and the vault into a bag. The men left with approximately $153,900 in cash and drove away in what the bank manager described as a late-eighties or early-nineties Oldsmobile.
>
> Detective James Calhoun of the Hamilton Police Department testified that upon arriving at the scene, he obtained the bank's surveillance camera videotape, made still photographs of the armed robbers, and dispatched to local patrol units a general description of the men and the getaway car. Detective Calhoun testified that he continued reviewing information at police headquarters that day, and when he returned to the station the next morning, he was given the name of Walter Pugh as a possible suspect. He also was advised that Bessie Pew, Walter's sister and Tyreese's aunt, owned a four-door maroon Oldsmobile.
>
> Pew testified that Walter's ex-girlfriend, Shanell Holston, called her on the morning of April 25, 2002, and told her that she read a news article in the paper that day about a bank robbery and that the police were looking for a maroon car. Pew then called the police station to find out if it was her car, a 1988 four-door maroon Oldsmobile Cutlas Ciera, that was involved in the robbery. She drove her car to the station and told Detective Calhoun that Walter had been in possession of her car for a couple of weeks and had returned it the day before a little after 3:00 in the afternoon. She also told Detective Calhoun that the person in the checkered shirt in the bank surveillance photo looked like her brother Walter and that the other man

---

[1] The record reflects that the two defendants are father and son.

5

could be Tyreese, but that she was not sure.

Stephanie Luster, Tyreese's girlfriend in 2002, also identified Walter in the surveillance photo but stated that she could not identify the other man because his face was masked. She testified that in April 2002, the month of the robbery, she left Ohio with Tyreese and Walter and drove south, stopping overnight at a hotel in Tennessee. Luster testified that she saw money in loose bills and in rubber bands on Walter's hotel bed and that when she asked about the money, Walter replied, "we hit a lick." Luster stated that the group drove to Atlanta the following day where Walter and Tyreese purchased clothes for everyone; they returned to Ohio a few days later.

Holston testified that once the group returned to Hamilton, she met up with them to switch cars. Walter and Tyreese transferred several items from Walter's Cadillac to Holston's car, including a shotgun, revolver, new clothes, and a bag containing money. Leaving the Cadillac behind, Holston drove Walter, Tyreese, and Luster to Mt. Healthy, Ohio to find a hiding spot for the group. She then went home and decided to contact an officer who was also a family friend to tell him where the police could find Defendants. She agreed to call Walter from the Hamilton County Sheriff's Office and allowed the police to tape the conversation, during which Walter told her that he had $100,000 for her father to wash and that he received the money from a big lick. Holston also testified that Walter was the man in the bank surveillance photograph.

Walter and Tyreese were arrested in Mt. Healthy on May 3, 2002. Tyreese was in possession of a shotgun at the time of his arrest. [FN1] A search of the house, pursuant to a warrant, also revealed a revolver and newly purchased clothes. Police recovered the Cadillac, which contained a parking permit from a Travel Lodge in Atlanta, a bag with ammunition, including .12 gauge shotgun shells, and an empty box of Black & Mild cigars.

> FN1. Tyreese's felon-in-possession charge, which was upheld on the original appeal, was based upon the gun in his possession during this May 3, 2002 arrest.

On November 18, 2005, after the retrial, the jury convicted Walter and Tyreese on all counts. On March 13, 2006, the district court sentenced Walter to 221 months' imprisonment, five years of supervised release, and restitution. In determining this sentence, the district court found by a preponderance of the evidence that Walter's offense level should be increased by two points for his aggravating role in the offense under U.S.S.G. § 3B1.1(c) and Application Note 2. The district court sentenced Tyreese to 221 months' imprisonment, five years supervised release, and restitution.

6

*United States v. Pugh* 273 Fed.Appx. 449, 451-453, 2008 WL 961564 (6th Cir., 2008).

In sum, while the evidence against the Defendant may have been circumstantial, there can be no dispute that it was more than sufficient to support the resulting conviction. Because there is no reasonable possibility that a motion for directed verdict would have been sustained based upon the evidence presented at the second trial, the Defendant can show neither *Strickland* error nor prejudice based upon his attorney's failure to make such a motion. *See United States v. Israel*, 133 Fed. Appx, 159, 2005 WL 1027563 (6th Cir. 2005)(where sufficient evidence exists to support a conviction, a failure to move for a directed verdict cannot have been prejudicial).

**II. Conclusion and Recommendation**

Accordingly, **IT IS RECOMMENDED**:

1. Defendant's motion to vacate his conviction and sentence (Doc. 197) should be **DENIED** as time-barred;

2. In the alternative, Defendant's motion (Doc. 197) should be **DENIED** on the merits;

3. This case should be dismissed from the active docket.

 *s/ Stephanie K. Bowman*
 Stephanie K. Bowman
 United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,                                         Criminal Action No.1:02-cr-54

vs.                                                 Bunning, J.
                                                       Bowman, M.J.

TYREESE DORRAN PUGH,

    Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).